360 So.2d 542 (1978)
Mrs. Bertha M. Lalonde, w/o and Doris J. LALONDE
v.
Gavin E. WEAVER, Highlines Construction Company and Employers Mutual Liability Ins. Co. of Wisconsin.
No. 8936.
Court of Appeal of Louisiana, Fourth Circuit.
June 13, 1978.
Rehearings Denied July 26, 1978.
*543 Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, for Gavin E. Weaver, et al., defendants-appellants.
James C. Cockfield, Cockfield & Gravolet, New Orleans, for Mrs. Bertha M. Lalonde, w/o and Doris J. Lalonde, plaintiffs-appellees.
Before BOUTALL, SCHOTT and GARSAUD, JJ.
BOUTALL, Judge.
Doris J. Lalonde and his wife Bertha Lalonde sue for personal injuries and damages as a result of an automobile collision. The trial court rendered judgment in their favor, and the defendants have appealed. They have answered the appeal seeking an increase in judgment.
On September 4, 1972 at shortly after 8:00 P.M., Doris J. Lalonde was operating his automobile on Louisiana Highway 23 in Plaquemines Parish, travelling north towards New Orleans. His wife Bertha accompanied him as guest passenger. At that same time Gavin E. Weaver was operating an El Camino Chevrolet owned by his employer, Highlines Construction Company and used in the scope of that employment. He was also travelling north and came upon plaintiff's vehicle from the rear and collided with it. The cause of the collision is at issue.
The testimony of plaintiffs is that they were proceeding in a northerly direction on the highway at a speed of about 45 miles an hour, when they were run into from the rear by defendant's automobile in a rather *544 violent fashion, throwing their automobile off of the highway, causing it to spin around and come to rest against a telephone post alongside the highway. The defendant disputes that they were travelling in this fashion, but testifies that they were stopped or nearly stopped in the roadway at an angle towards the right with the front of the car actually off of the paved portion of the road. It is contended that plaintiff driver was in the process of making a "U" turn in the roadway to retrace his path, and that this was the cause of the collision. Defendant testified that he was going approximately 55 miles an hour (the speed limit was 60 at that time) and that he saw the vehicle 100 feet or so ahead, and was unable to avoid the collision, although attempting to slow down and turn to the left. His testimony is supported in general by the two passengers accompanying him.
The issue of liability thus presented was necessarily resolved by the trial court in a determination of the credibility of the witnesses. The testimony is in direct conflict. We reach the same result as the trial judge, and we conclude that the record supports that result.
Photographs of the Lalonde vehicle were placed in evidence showing the damages sustained by that vehicle. Except for the side of the vehicle where it struck the telephone post, the damage is on the rear, most heavily toward the left side. These damages corroborate the explanation given by plaintiffs, and is at variance with the theory of the Lalonde car being at an angle to the right. Additionally, the investigating officer testified concerning his findings in the case, and the physical facts as expressed by him, that is the point of collision, a lack of skid marks, and relative positions of the vehicles after the collision, all tend to reinforce plaintiffs' testimony.
It is also noted that as a result of the collision, the officer caused Weaver to be charged with driving while intoxicated and negligent injuring, to which charges Weaver pleaded guilty. The officer testified that when he took Weaver to the hospital he noticed an odor of alcohol about him, and an intoximeter test was performed by another officer. The results of that test showed a .20 reading on the scale. Weaver concedes that he had had four bourbon and water highballs shortly before the accident, but contends that this had no effect upon him. His companions corroborate this testimony, pointing out that they simply relaxed for an hour or so after being required to work this particular Labor Day. However, we note that Weaver only saw the Lalonde vehicle when he was 100 feet away, when there was no impediment to his view on the highway in front of him except the darkness of the evening. His fellow passengers testified that he did not begin to slow until after one of them, Nata, yelled that there was a car in the road ahead of them. Considering these circumstances, together with the other facts discussed above, we conclude that the collision was attributable to the negligence of Weaver, and the defendants are liable for plaintiffs' damages.

DAMAGES OF MR. DORIS LALONDE

The trial judge awarded the following
amounts to Mr. Lalonde.
1. Medical and Drug Bills for both
 Mr. and Mrs. Lalonde $44,730.59
2. Future Medical and Drug Bills 7,638.40
3. Property Damage 100.00
4. Loss of Past Wages 23,332.07
5. Loss of Future Wages 38,547.78
6. Cervical Strain 750.00
7. Lumbo Sacral Strain 5,000.00
8. Hernia 2,500.00
9. Permanent Disability to Right
 Leg 20,000.00
10. Conversion Reaction 25,000.00
for a total of $127,598.84.

Recounting the facts of the accident, the Lalonde vehicle was struck from the rear, knocking it off the road, swinging it around 180 into a utility pole. The force of the collision was such that the front seat broke and plaintiffs were jolted backwards, then forwards again when the vehicle hit the utility pole. Mr. Lalonde complained of blows and injury to his neck, back, abdomen and leg. Mr. Lalonde was taken to the Plaquemines Parish General Hospital for examination, and was released with instructions *545 to seek orthopedic treatment. The next day he went to Ochsner Foundation Hospital where he was examined for possible treatment. However he testified that he did not have much faith in Ochsner Foundation and instead was treated by Dr. Vernon Kroll, whom he first saw on September 14. Dr. Kroll treated him for a period of over 2 years.
In the initial examination, Dr. Kroll determined that Mr. Lalonde had suffered a cervical strain and a lumbo-sacral strain and diagnosed a right inguinal hernia. Appellant makes no serious issue as to the cervical and lumbo-sacral strain, but argues that the hernia was a developmental condition and not caused by the accident. Dr. Kroll agreed that such a hernia could be caused either by trauma or by repeated inter-abdominal pressure over a period of time, and that the past history of the patient would be a determinative factor as to the occurrence of the hernia. He was given no prior history relating to hernia by Mr. Lalonde, and the evidence preponderates that there was none. The doctor concluded that the trauma (Mr. Lalonde testified that when the seat was flipped back up he struck his stomach on the steering wheel) either caused the hernia or aggravated a pre-existing weakened condition into the patently symptomatic condition he discovered. Accordingly, we would affirm the award for the cervical strain, lumbo-sacral strain and hernia.
The course of treatment of Mr. Lalonde is not the usual one. Dr. Kroll noted that by December 28, 1972, the cervical area was symptom free and needed no further treatment, but that the lumbar-sacral sprain was still giving problems and necessitated further treatment. The pain was resolving however, and it seemed to Dr. Kroll that after the plaintiff had undergone surgery for the inguinal hernia, that most of the back complaints were resolved by March 1973 and he was considering the discharge of the patient. However the patient returned to his office with peculiar complaints which he really didn't have before. Dr. Kroll noted that he was now limping and complaining of pain and that he could find no basis for the complaints. Mr. Lalonde was referred to Dr. Jack Wickstrom, an orthopedist, and to Dr. Lindsay Graham, a psychiatrist, for consultation in regard to these complaints. None of the doctors could find any physical basis for Lalonde's complaints, and it was noted that the leg presented a case of hypalthesia, or stocking anesthesia, and that Lalonde's entire spine listed to the left, all indicating a conversion reaction and the necessity for psychiatric treatment.
The basic treatment for Mr. Lalonde's condition after June 1973 was in the nature of psychiatric or psychological treatment, and it was determined that not only did he have a conversion neurosis, but that additionally he suffered a depressive reaction which encompassed a complete change in his lifestyle, making him become withdrawn and suffering from a sense of general loss and hopelessness. All of the medical testimony is in agreement with the tragic effect that this accident has had upon Mr. Lalonde's living situation. A number of experts were produced who examined Mr. Lalonde for his condition and who recommended various forms of therapy. The evidence preponderates that his present condition was brought on by the accident and the resulting injuries. Under these circumstances he is entitled to an award for his suffering and disability.
In considering that aspect of damages, the court awarded $20,000 for permanent disability to the right leg and $25,000 for a conversion reaction. It is argued to us that the award is not based upon proper medical foundation, but, as noted above, we conclude otherwise. It is next argued that the award for permanent disability to the right leg is included within the award for a conversion reaction since it is one of the results of the conversion reaction. This proposition causes us some concern because, although the trial judge made specific awards, he did not give any reasons to support those awards. The doctors point out there was a difference between the conversion reaction and the depressive reaction, and that the *546 conversion reaction encompassed such results as the hypalthesia of the leg, while the depressive reaction encompassed his lifestyle. Plaintiff makes this point to us in arguing that the trial judge failed to award anything for the depression, although he made an award for depression of a less severe nature to Mrs. Lalonde. The evidence is clear that the only disability to Mr. Lalonde's right leg is that resulting from the conversion reaction. Thus we are faced with a possibility that the trial judge erred in considering the leg disability and the conversion reaction to be separate. On the other hand, considering the evidence of the difference between the conversion reaction and the depressive reaction, we are faced with the possibility that the trial judge erred in not making an award for the depressive reaction. Faced with this, we have considered the appropriateness of a remand to the trial court to ascertain the precise basis upon which he made the award so we could determine if error is present. We have rejected that solution, because the appeal to us is on fact as well as law, and all of the evidence is in the record for us to make a determination as to the extent of damages suffered by this plaintiff.
We are required to abide by the "much discretion" rule set out in Louisiana Civil Code Article 1934(3) which accords much discretion to the trial judge in fixing the amount of general damages. We choose to consider these two awards, of $20,000 and $25,000, to be one general award of $45,000 for the neuroses suffered and the physical effects resulting and to determine if that award falls within the much discretion rule. The medical evidence preponderates that although there is no physical basis for Mr. Lalonde's suffering and pain, that nevertheless it is real to him and he does experience it just as if it were physically motivated. Additionally he has suffered a complete change in lifestyle, he is disabled from work, and suffers from a general feeling of loss and futility, withdrawing himself from society and the pursuits he formerly enjoyed. He has been taking therapy over a long period to alleviate his situation, which necessitated at trial time, treatment 5 days per week at a daycare center. The doctors express doubt that he will ever be cured and be able to resume his former level of either physical, mental or social activity. We believe the award of $45,000 to be within the discretion of the court and are not able to say that it is manifestly too high or too low.
At this time we point out that the awards for past medical and drug bills and future medical bills are justified by the record. These items have been objected to mainly on the basis of inclusion of those applicable to the inguinal hernia and the conversion reaction and depressive reaction discussed above. Since we conclude that these are properly attributable to the accident we affirm those awards.
The remaining issue as to Mr. Lalonde's damages are the awards for past wages and future wages. Initially, we conclude that Mr. Lalonde was disabled from working from the time of the accident and continues to be disabled for the future. By the time that he had recovered from the physical effects of the accident, that is the cervical strain, lumbo-sacral strain and hernia, he began suffering from the emotional effects of the accident, and was considered disabled by the preponderance of medical opinion.
Mr. Lalonde was born October 11, 1913, and the pertinent trial date was March 17, 1976, at which time the testimony of Dr. Melville Z. Woolfson, an economist, was taken. Dr. Woolfson determined the net annual earnings of plaintiff to be $6,587.91, or $548.99 per month during the year 1972. On that basis, he computed the loss of net earnings over the past 42½ months prior to trial to be $23,332.07. He further computed a future loss of net earnings of $38,547.78 based on the work life expectancy of 6.4 years of Mr. Lalonde, plus a 6% growth factor and minus a 5% discount. He computed several alternate propositions, but this is the one that was accepted by the trial judge and awarded to plaintiff.
There is no contradictory evidence disputing these figures. Instead it is argued that *547 as a legal matter the worklife expectancy would only be three years, ending at age 65, instead of the 6.4 years used by Dr. Woolfson. However, the proof in this case shows that this man has led an active work life throughout his adult years, and had been holding two positions during a large part of that time. At the time of the accident he was working for his son in a supermarket, and testified it was his intention to work there for the rest of his life provided he could do so. The economist computed that his life expectancy was 14.9 years, but considered that his effective work life would only be 6.4 years. Based on these facts, we agree with the trial judge's acceptance of his conclusion. Similarly, we point out that no evidence is presented to show that a 6% growth factor and a 5% discount are not reasonable under the circumstances. No one can determine these figures with preciseness, and although on other occasions the appellate courts may have accepted other figures, the evidence in this case shows the figures to be reasonable.

THE AWARD OF DAMAGES TO MRS. BERTHA LALONDE

The trial court awarded the following
damages to Mrs. Bertha Lalonde:
1. Cervical Strain $7,500.00
2. Lumbo Sacral Strain 7,500.00
3. Disability to body as a whole,
including the knee 30,000.00
4. Depression 10,000.00
for a total of FIFTY-FIVE THOUSAND
AND NO/100 ($55,000.00) DOLLARS.

Appellants contest this award of damages contending that it is excessive, that the various items of the award are repetitious and should be included in the one award for disability as a whole, and that the depression is not causally related to the accident.
As a result of the collision, Mrs. Lalonde was thrown backwards and forwards in the automobile, and was taken to the Plaquemines Parish General Hospital complaining of injuries to her neck and shoulder, lower back, and right leg. The next day she accompanied her husband to Ochsner Foundation Hospital where she was examined and a course of treatment recommended. She then sought the services of Dr. Vernon R. Kroll and began a history of long and intensive treatment. Following his initial examination of September 14, 1972, Dr. Kroll diagnosed Mrs. Lalonde's injuries as cervical strain, lumbo-sacral strain and contusions, abrasions and lacerations of the right knee. He also noted that Mrs. Lalonde was suffering from pulmonary congestion, the cause of which was not related to the accident, but which caused complications in treating the strains. Dr. Kroll placed her on a regime of conservative treatment and physiotherapy, advising her to continue wearing the cervical collar recommended by Ochsner. He noted that Mrs. Lalonde had degenerative disease in the area of the 5th cervical vertabra, minor spurring in the lumbar region, and minimal spurring in the area of the right knee. He also determined that there was spasm of both trapezial muscles and the paraspinus musculature in the cervical area, and that there was some spasm of the paraspinus muscles in the lumbar area. His conclusion was that although she had had some degenerative disease in her spine, that the cause of the severe symptoms that he discovered was the collision.
During the course of the treatment by Dr. Kroll Mrs. Lalonde began to improve, but only slowly, and Dr. Kroll was concerned particularly with the cervical area because the persistent pulmonary condition caused coughing which in turn caused aggravation of that area and continued pain. In any event towards the end of December she began to improve more rapidly, but still continued to have pain and symptoms during the months of January through March. At that time he determined that she should be hospitalized in an attempt to afford her hospital traction treatment, and to make an effort to determine the cause of her continued pain and a probable course of treatment. She was hospitalized from April 27 to May 11, 1973 by Dr. Kroll in consultation with Drs. Saer and Richardson. All of them concluded that her cervical condition would not be helped by surgery, and decided *548 to continue conservative treatment. She was then given a surgical traction device to use at home and a lumbo-sacral back support, together with advice on medication. At this time she improved somewhat from her original injury, but the doctors concluded it was uncertain how long she would continue to have symptoms. Dr. Kroll saw her again in July, 1973, at which time she continued to complain of pain in her neck and back. It must also be noted that in September, 1973 she was examined by Dr. Jack Wickstrom who determined that she still had some spasm in the cervical region and restriction of motion, together with tenderness along her lumbo-sacral area. He determined that these were the residuals of the cervical and lumbo-sacral spinal strains which she suffered in the accident. He particularly examined her right knee and found some crepitus and chondromalacia. Dr. Wickstrom assigned a 20 to 25% disability of the neck, 10% disability of the back and 20% disability of the knee. He concluded that she suffered 30% disability to the body as a whole, plus 20% disability to the knee.
However, Mrs. Lalonde still continued to have complaints despite the treatment afforded her, and Dr. Kroll eventually came to the conclusion that she had basically recovered to large degree from her physical injuries, but that her strong emotional overlay caused continued problems which made it difficult to treat. She was then referred for psychiatric examination and treatment by Dr. Graham.
Dr. Graham examined her in April, 1975 and was most impressed by her general feeling of depression and hopelessness. He determined that she was suffering from a depressive reaction, neurotic type, which was precipitated by the accident, and he felt that there was a chance she could respond to hospitalization for a month or so or perhaps could reach resolution of her problems by attending a social worker for a couple of months. He referred her to a psychologist and also to the social worker but was unable to resolve her problems. Shortly thereafter she was attended by Dr. Marvin Miller, who was also attending her husband. He noted that she had physical complaints of pain yet, but that mainly she was suffering from a depressive reaction resulting in such things as insomnia, inability to attend to her usual household duties, and suffered chronic annoyed malcontentment. He concluded that her situation was such as to render her disabled from attending her household work and other duties and that she needed regular, consistent treatment over a long period in order to resolve her problems. The conclusions of these doctors are reinforced by the testimonies of others to whom they were referred. We conclude that she did indeed suffer a neurosis as a result of the accident and she is entitled to damages in compensation thereof.
Applying our findings to the judgment awarded Mrs. Lalonde, we conclude that she is entitled to recovery for her physical pain and suffering as well as her neurosis. The trial judge gave her an award in four categories as mentioned above, and our examination of the record causes us to conclude that he erred in duplicating some of the awards. We note that he awarded an amount of $7,500 for cervical strain, $7,500 for lumbo-sacral strain, and $30,000 for disability to the body as a whole, including the knee. As we understand the evidence, we believe the disability to the body as a whole to include not only the knee but also the cervical strain and lumbo-sacral strain. We refer for example to the summation of Dr. Jack Wickstrom who concisely summed up his opinion that the neck and back injuries constituted a 30% disability of the body as a whole, along with a 20% disability of the knee. We conclude that the individual awards for the strain and the disability of the body as a whole are indistinguishable and duplicatory, and that the awards of $7,500 each for the cervical strain and the lumbo-sacral strain should be eliminated and the total award reduced accordingly. See Kogos v. Rittiner, 228 So.2d 62 (La.App. 4th Cir. 1969).
Insofar as the award for $10,000 for the depression neurosis, having found that *549 it was caused by the accident and is a compensable item of damages, we cannot find the amount of that award exceeds the much discretion awarded to the trial court.

DECREE
For the reasons above assigned, the judgment in favor of Doris Lalonde is affirmed. The judgment in favor of Bertha Lalonde is amended to delete therefrom the amount of $15,000 for cervical strain and lumbo-sacral strain, reducing the total award to the sum of $40,000, and as thus amended the judgment is affirmed.
AMENDED AND AFFIRMED.