583 So.2d 61 (1991)
James K. WARNER, Jr. and Cora F. Warner, Plaintiffs-Appellants,
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY, INCORPORATED, Defendant-Appellee.
No. 22496-CA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
Rehearing Denied July 24, 1991.
*62 Guerriero and Guerriero by Joe D. Guerriero, Monroe, for plaintiffs-appellants.
Hoffman, Sutterfield, Ensenat & Bankston by Michael W. McKay, Baton Rouge, for defendant-appellee.
Before SEXTON, LINDSAY and STEWART, JJ.
STEWART, Judge.
Appeal by both plaintiff and defendant from an award of damages in a slip and fall case. We affirm in part, amend in part, and reverse in part.

FACTS
On September 22, 1986, plaintiff, James K. Warner, Jr., slipped and fell in water on the floor of defendant, The Great Atlantic & Pacific Tea Company, Inc. (A & P), a food store located at the Glenwood Shopping Mall in West Monroe, Louisiana. Mr. Warner entered the store to purchase groceries and as he selected a box of ice cream bars, he slipped and fell.
On August 26, 1987, Warner filed suit for damages against A & P requesting medical expenses, loss of income, personal injuries, and loss of consortium. The case was tried before a jury who found in favor of Warner on the issue of negligence and awarded $69,000 including $25,000 for medical expenses, $40,000 for the loss of earning capacity, and $4,000 in general damages for pain and suffering. No recovery was granted for mental anguish nor loss of consortium. On May 22, 1990, plaintiff filed a motion for a judgment notwithstanding the verdict and motion for new trial which were denied. He now appeals the judgment alleging error in quantum. Defendant, A & P, appeals as well claiming an excessive award and, in the alternative, that the award sufficiently compensated Warner.
Warner's appeal asserts that the jury erred in awarding $25,000 for medical expenses when the evidence clearly reveals by more than a preponderance of the evidence *63 that the total amount of medical and drug bills he was entitled to was $87,573.80.
Warner next avers that the jury erred in awarding only $40,000 for loss of earning capacity. He argues that the only economic expert who testified at trial computed loss of earning capacity at approximately $515,000. Warner states that it was unreasonable for the jury to have awarded only $40,000 based upon the uncontradicted evidence given by the expert in this case.
Warner next asserts that the jury was in error in awarding only $4,000 in damages for pain and suffering in light of the inconsistent jury awards of medical damages in the amount of $25,000 and loss of earning capacity in the amount of $40,000.
Warner also claims that the jury was in error in awarding zero damages for mental anguish based upon expert testimony that Warner was suffering from a major depressive disorder as a result of the accident in question as well as the testimony of his son and other lay witnesses who testified as to Warner's change in attitude after the fall.
Finally, Warner argues error in the jury award of zero for loss of consortium based upon Mrs. Warner's testimony that his personality drastically changed since the time of the accident so as to render their living together insupportable.
Appellee, A & P, asserts that the jury abused its discretion in awarding any damages for more than a minor back strain when the evidence only supported that finding due to plaintiff's extensive preexisting injuries prior to the slip and fall, and the lack of objective symptoms requiring back surgery until 14 months after the fall.
Appellee next argues that if this court determines that A & P is responsible for any of plaintiff's injuries, then the jury's finding as to quantum must be upheld.

DISCUSSION
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making an award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Winterrowd v. Traveler's Indemnity Company, 452 So.2d 269 (La. App. 2d Cir.1984), writ granted, 457 So.2d 1185, writ denied, 457 So.2d 1195, affirmed, 462 So.2d 639 (1985); Coco v. Winston Industries Incorporated, 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971). Moreover, the appellate function in reviewing quantum is limited to raising an inadequate award to the lowest award that the trial court could have reasonably awarded, and lowering excessive awards to the highest amount the trial court awarded. Winterrowd, supra; Reck v. Stevens, 373 So.2d 498 (La.1979); Coco, supra; Alexander v. Leger, 423 So.2d 731 (La.App. 3d Cir.1982).
A brief review of Warner's medical history reveals that he had back surgery as early as 1982. In 1986, Warner again experienced back pain which resulted in surgery in April 1986 for the removal of a ruptured disc. Warner was released from medical treatment in July 1986 after which he performed small amounts of welding jobs. The incident in question occurred on September 23, 1986 resulting in indications of muscle spasms on the night in question. Warner continued to complain of pain and visited physicians in October, November, and December 1986 and through the late months of 1987. In November 1987, he complained of having "popped his back" while stooping to dry his feet and experienced pain while getting into his son's car in December 1987. It was not until this time that objective signs of low back injury were noted indicating the possibility of a disc problem. Surgery was performed in January 1988 to alleviate this disc problem.

MEDICAL EXPENSES
The jury awarded $25,000 for itemized medical expenses. Warner presented documentation indicating a total amount of *64 $87,573 for medical bills from 1986 through 1990. He contends that the jury erred in failing to award the larger amount.
At trial, Warner requested medical costs incurred after the September 23, 1986 accident, including those resulting from complaints throughout the end of 1986, the entire year of 1987, the back surgery performed in January 1988 to remove the herniated disc, and costs incurred through 1990.
Dr. Don Irby, a neurological surgeon for Warner, testified that there were no objective findings between September 1986 and November 1987 which would have supported disc surgery. He testified that, in fact, Warner's back problems had resolved during that time. He could not state with any degree of certainty that the surgery of 1988 was related to the incident in the A & P store and it was not until January 1988, after separate incidences of back popping and Warner getting into the car, that the neurological findings supporting surgery were discovered.
Dr. Madura Rangaraj, an internal medical physician who saw Warner on October 31, 1986, concluded that Warner suffered from muscular pain as a result of the A & P slip and fall. Dr. Rangaraj continued to work with Warner until October 29, 1987 and noted that Warner had marked pain and significant restriction of his low back movement which he characterized as predominantly osteoarthritis and post-traumatic and post-operative scar tissue which caused the persistent pain.
Dr. Baer Rambach, an orthopedic surgeon, saw Warner on December 5, 1986. Dr. Rambach could not find any localized areas of mechanical nerve root compression signs suggestive of intervertebral disc injury with nerve root irritation although Warner was in a great deal of discomfort, particularly in his lower back and his upper left extremity and his left forearm, wrist, and hand.
Dr. Rifat Nawas, an orthopedic surgeon, also saw Warner on October 15, 1986 when he complained of pain in his neck and lower back following the A & P incident. Dr. Nawas testified that there was no significant disc herniation or slipped disc evidence and he diagnosed Warner as having musculoligamentous sprain and strain to his neck and to his lower back.
Warner admitted that after the September 1986 accident, he suffered some sort of injury in November 1987 when he squatted down to dry his feet which caused another onset of back pain. He additionally testified that in December 1987, he attempted to get into his son's race car and had an onset of pain in his hip where he said it "felt just like it did when I was lying there in A & P."
After hearing all of this testimony, the jury awarded $40,000 in medical expenses. We cannot find clear error in this finding due to the testimony which indicated that Warner experienced two other incidents causing the onset of back pain after which disc problems manifested themselves. The jury apparently found that these incidents along with the manifestations thereafter were unrelated to the slip and fall incident in September 1986 and any medical expenses incurred as a result were not recoverable. None of the physicians could unequivocally state that the surgery of January 1988 was due to the slip and fall in the A & P and all noted the separate incidents. This, when coupled with Warner's admissions and the fact that the objective signs of disc problems arose after subsequent injuries, demonstrates no abuse of discretion in the jury's finding.

LOSS OF EARNING CAPACITY
The burden is on the plaintiff to prove that because of his disability, he has suffered a loss of income. Winterrowd v. Traveler's Indemnity Company, supra; Holmes v. Texaco, Inc., 422 So.2d 1302 (La.App. 5th Cir.1982); Profit v. Linn, 346 So.2d 253 (La.App. 1st Cir.1977). In evaluating plaintiff's evidence, we are to consider his physical condition prior to the accident, his work record, the extent of his earnings, and the probability that he would have earned similar sums in future years except for his disability. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); Winterrowd, supra.
*65 Warner's expert in this case, Dr. Charles Bettinger, set plaintiff's loss of wages at a maximum of $537,000. His was the only evidence presented at trial on the issue of loss of future and past wages. The jury, however, awarded only $40,000. We cannot find the jury clearly wrong in making this award. As noted earlier, the jury apparently determined that the entirety of plaintiff's back problems were not related to the slip and fall in A & P. The evidence shows that Dr. Irby advised Warner at the time of the April 1986 back surgery not to return to heavy manual labor. Also the evidence shows that other subsequent injuries were unrelated to the slip and fall. It was therefore reasonable for the jury to conclude that Warner's inability to work was due only in part to the September 23, 1986 accident. Thus, a determination had to be made as to the proportion of loss of earning capacity attributable to the accident in question. The jury has broad discretion in assessing credibility and making its factual findings. After reviewing the evidence, we cannot conclude that the $40,000 award is an abuse of discretion.

PAIN AND SUFFERING
The jury awarded $4,000 in general damages for pain and suffering to Warner. Although the record reflects that plaintiff had prior and subsequent back problems and surgeries, the jury found that because of the slip and fall accident, Warner received some injury to his back and neck. This is evidenced by the award of medical expenses and loss of earning capacity. The medical evidence reveals that Warner experienced muscle spasms on the night in question and continued to experience serious pain after the accident which the jury determined in part to be related to the slip and fall. When considered with the jury's awards for medical expenses and loss of earning capacity, and considering all the circumstances relating to plaintiff's medical condition, we find this award for general damages to be impermissibly low and constitutes an abuse of discretion. We conclude that under these facts, the amount of $15,000 is the lowest amount which the trier of fact could have awarded as reasonably within its discretion. Compare Lacour v. Travelers Insurance Company, 502 So.2d 209 (La.App. 3d Cir.1987); Saucier v. Winn-Dixie Louisiana, Inc., 499 So.2d 1033 (La.App. 3d Cir.1986).

MENTAL ANGUISH
An assessment for damages for mental pain and anguish is a matter largely within the discretion of the trier of fact. LSA-C.C. Art.1934; Nickens v. McGehee, 184 So.2d 271, (La.App.1966) writ refused, 186 So.2d 159, 249 La. 199.
The jury failed to award any damages for mental anguish in this case. The testimony of Dr. Calvin Walker, a board certified psychiatrist who examined Warner, indicated that he diagnosed Warner as having chronic pain syndrome and depression. In his opinion, the depression was temporarily related to the fall of September 1986 because a history revealed that Warner developed severe depression only after the fall.
The testimony of David Dallas Thomas, a clinical psychologist who conducted several tests on Warner, likewise indicated that Warner suffered from some sort of depressive disorder. While Warner had suffered with depression in the past, Dr. Walker, a psychiatrist who treated Warner, testified that Warner was prone to conversion episodes which he felt were not a problem before September 1986. After viewing this uncontradicted evidence and testimony, we determine that Warner has shown by a preponderance of the evidence that he suffered mental anguish as a result of the accident. In reviewing the record and applying the standard for appellate review, we conclude that $5,000 was the lowest amount that could have possibly been awarded based upon the evidence relating to mental anguish as it related to the slip and fall. Compare Lalonde v. Weaver, 360 So.2d 542 (La.App. 4th Cir.1978); Richard v. Guillory, 392 So.2d 777 (La.App. 3d Cir.1980).

*66 LOSS OF CONSORTIUM
A claim for loss of consortium is broken down into several components including: (1) loss of love and affection, (2) society in companionship, (3) sexual relations, (4) the right of performance of material services, (5) the right of support from her husband, (6) aid and assistance, and (7) loss of felicity. Proof of any of these elements is sufficient for an award of consortium. Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985).
The jury in this case made no award to Mrs. Warner for loss of consortium. In applying these factors to the case at hand, we find that the first element, loss of love, has not been shown to be an element in this case. Mrs. Warner never indicated that she stopped loving her husband as a result of this accident. The second factor, society and companionship, is at issue as Mrs. Warner testified that the couple spent a lot of time together prior to the accident but were unable to do things together after this time. There has been no testimony relevant to the third factor, sexual relations, however, the fourth factor is relevant in this case, the right of performance of material services. Mrs. Warner testified that Mr. Warner would help her around the house shampooing the carpet and would work in the garden shoveling dirt, mowing the yard, and doing weeding prior to the accident. She testified that he has been unable to do this since the accident and she feels that she has suffered because of it. The next element is loss of financial support from her husband. Although Mr. Warner was unable to work on a full-time basis prior to this accident, the testimony reveals that he was able to endure some part-time employment. Mrs. Warner testified that he was unable at all to work since the September 1986 accident. Because, however, we award compensation to Mr. Warner for lost wages and earning potential, recovery of this element by Mrs. Warner is not warranted. The sixth element, aid and assistance, has not been distinguished from the performance of material services and is included in that analysis. Finally is the loss of felicity. Mrs. Warner has demonstrated by her testimony, along with the testimony of Mr. Warner and their children, that the overall happiness of the couple has diminished since the accident in question due to Mr. Warner's constant complaints of pain as well as the depression that he has been experiencing because of it. This as an element of consortium is a compensable loss.
In sum, we find that Mrs. Warner has demonstrated by a preponderance of the evidence strain on the relationship and some loss of society and companionship as well as a loss in the performance of material services. We find that the jury was clearly wrong in failing to award Mrs. Warner compensation for these losses. Accordingly, we award the sum of $1,500 to Mrs. Warner for loss of consortium.

APPEAL BY A & P
Finally, we address the claim of appellant, A & P food store for a decrease in the damages awarded. We find no merit to the claim of A & P based upon the testimony and evidence supporting the jury finding that Mr. Warner was entitled to damages as a result of the September 22, accident.

CONCLUSION
Based upon the foregoing, the decision of the jury in this case is affirmed in part, amended in part to reflect an increase in the amount of damages awarded for pain and suffering, and reversed in part to award damages for mental anguish and loss of consortium. Costs of this appeal are to be equally divided between the parties.
The trial court judgment is recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment rendered herein in favor of plaintiff, James K. Warner, Jr., and against defendant, The Great Atlantic & Pacific Tea Company, Inc., in the full sum and amount of EIGHTY-FIVE THOUSAND AND NO/100 DOLLARS ($85,000) including TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000) for medical expenses, FORTY THOUSAND AND *67 NO/100 ($40,000) DOLLARS for lost and future earnings, FIFTEEN THOUSAND AND NO/100 DOLLARS ($15,000) for pain and suffering, and FIVE THOUSAND AND NO/100 DOLLARS ($5,000) for mental anguish, past and future, together with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment rendered herein in favor of plaintiff, Cora F. Warner, and against defendant, The Great Atlantic and Pacific Tea Company, Inc., for loss of consortium in the full sum of ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($1,500), together with legal interest thereon from date of judicial demand until paid.
AFFIRMED IN PART, AMENDED IN PART, AND REVERSED IN PART.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, LINDSAY and STEWART, JJ.
Rehearing denied.