712 So.2d 97 (1996)
Billy WHITED, Plaintiff-Appellant,
v.
HOME DEPOT U.S.A., INC., Defendant-Appellee.
No. 27938-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
Opinion Accepting Original Dissent on Rehearing August 21, 1996.
Writ Denied November 22, 1996.
*98 C. William Gerhardt & Associates by Walter W. Gerhardt, Shreveport, for Plaintiff-Appellant.
Lunn, Irion, Johnson, Salley & Carlisle by James A. Mijalis, Shreveport, for Defendant-Appellee.
Before HIGHTOWER, BROWN and GASKINS, JJ.
HIGHTOWER, Judge.
In this action arising from a slip and fall accident, plaintiff Billy Whited appeals the jury's rejection of his claim for damages. We affirm.

FACTS AND PROCEDURAL HISTORY
On the afternoon of January 13, 1992, Whited entered the Home Depot store in Shreveport to obtain the price of electrical wiring needed for a home project. Upon procuring a written estimate from an employee, plaintiff began to leave the establishment. Looking at the quote as he walked down an aisle, Whited slipped and fell in some liquid, presumably water. Several witnesses concurred that, after plaintiff slid through the accumulation, it measured approximately two feet by two feet and appeared almost dry. They additionally reported no difficulty in seeing the hazard. Soon after the accident, an employee in the electrical department, Roy Jones, discovered the customer lying on the floor and called for assistance. In compliance with company policy, the loss prevention supervisor (another *99 employee) filled out the necessary reports and authorized plaintiff to have his condition evaluated by a physician.
Three months later, Whited filed suit against the store. A jury subsequently decided in defendant's favor.[1] After unsuccessfully moving for new trial as well as judgment notwithstanding the verdict, plaintiff appealed. Home Depot answered, urging other grounds for an affirmance and, in the alternative, asserting plaintiff's comparative negligence.

DISCUSSION
La.R.S. 9:2800.6 requires that a merchant exercise reasonable care to keep floors and aisles free of any hazardous conditions, and a customer in a self-service store may reasonably assume that duty has been discharged. La.R.S. 9:2800.6 A; Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3d Cir. 1993). Pursuant to this statute, however, an accident-causing condition does not create a presumption of store negligence. Stated another way, though the plaintiff proves he suffered damages due to an accident caused by a hazardous condition on the merchant's premises, the burden of proof does not shift to the merchant to exculpate itself. Saucier, supra. Instead, the plaintiff additionally must prove that the hazardous condition presented an unreasonable risk of harm, that the merchant either created or had actual or constructive notice of the condition, and that the merchant failed to exercise reasonable care. Id.; La.R.S. 9:2800.6 B.
In Whited's designation of errors, he maintains that the trial court in the present case failed to reflect the law accurately in its jury interrogatories, that the jury made clearly wrong factual findings, and that the panel's determinations are inconsistent.

Jury Interrogatories
Initially, we address the assignment concerning an alleged error in the jury interrogatories. Specifically, Whited asserts that the sixth question did not track the language of La.R.S. 9:2800.6, and, thus, is incorrect. That query required the jury to determine if "[o]n January 13, 1992 ... Home Depot [took] reasonable protective measures to keep its premises free of substances that might cause a patron to fall."[2] Whited argues that, in listing the third element that a plaintiff must prove, La.R.S. 9:2800.6 B(3) only requires a demonstration that "[t]he merchant failed to exercise reasonable care." In reference to such care, however, Paragraph A of the statute explains that a merchant owes those who use his premises "a duty ... to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." Thus, reading the enactment as a whole, the sixth jury interrogatory is clearly consistent with the law.
Moreover, Whited did not lodge his objection in the trial court. Although he requested, and defendant agreed, that the question be limited to the day of the accident, the record reflects no further complaints about the interrogatories. Failure to make a contemporaneous objection to either jury interrogatories or a verdict form precludes a party from raising the issue for the first time on appeal. Luman v. Highlands Ins. Co., 25,445 (La.App. 2d Cir. 02/23/94), 632 So.2d 910; Bell v. Vickers, 568 So.2d 160 (La.App. 2d Cir.1990).

*100 Jury Factual Findings and Inconsistencies

Plaintiff next contends the jury's finding, that Home Depot exercised reasonable care, is manifestly erroneous. That determination, he further argues, is factually inconsistent with the panel's conclusion that defendant possessed actual or constructive knowledge of the unreasonably dangerous condition. Understandably too, if we are indeed confronted with inharmonious answers, a de novo review of the record may be required.
As stated, the jury interrogatories propounded in the instant case are consistent with the statute. Even so, plaintiff's contentions invite examination of the interplay between the concepts of notice and reasonable care. According to the statute, "constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. La.R.S. 9:2800.6 C(1). By definition, then, a finding of constructive notice precludes a conclusion that the merchant exercised reasonable care. On the other hand, if a jury found actual notice, the reasonableness-of-care aspect would not perforce be resolved against the merchant.[3] See Diez v. Schwegmann Giant Supermarkets, 94 1089 (La.App. 1st Cir. 06/23/95), 657 So.2d 1066, writ denied, 95-1883 (La.11/17/95), 663 So.2d 720.
Of course, the answers to the interrogatories did not specify whether Home Depot possessed actual or constructive notice of the puddle of water. Furthermore, the jury's intent cannot be discerned, even though there is no evidence of actual notice in that the record fails to disclose that any employee created or observed the hazard before the accident. Accordingly, we are constrained to interdict the jury verdict. Cf. Diez, supra. And, as a result, we are confronted with either remanding the case for a new trial or deciding the matter on the record, which is complete with no substantial conflict in the testimony. We will pursue the latter course.
Whited suggests, and Home Depot does not dispute, that the puddle of water constituted an unreasonable risk of harm. Next, in addressing the matter of notice, it should be borne in mind that the only water sources within the store are situated well away from the electrical department. Although one employee reported an occasional leak in the roof, he explained its location to be several aisles away from the accident site. Additionally, customers are discouraged from bringing beverages into the building. Hence, in approaching this aspect of the case, plaintiff relied heavily upon the testimony of a civil engineer, Austin Hagan, Jr., in an effort to establish that the puddle had been present for an extended time. Close examination of the expert's opinion, however, seriously undermines that proposition.
Upon assuming that the wet spot measured two feet by two feet in size, had a depth of one-tenth inch, was indoors, and was left undisturbed, Hagan concluded it would have taken approximately eight hours, certainly more than one hour, to evaporate or become "almost dry" as reported by witnesses at the scene. The expert failed to consider other significant factors, however, in reaching that conclusion. Importantly, and as he eventually acknowledged, if the water had been smeared about to achieve the stated expanse, the puddle would have been thinner and would have dried faster.[4] And, as he further agreed, a two by two spot that had become "almost dry" may have initially been ten feet by ten feet. Conversely, if the liquid had measured two by two when placed on the floor, it possibly would have been that same size twenty seconds later. In sum, if provided with more information, Hagan stated his opinion could change. Thus, considered in its totality, we find his testimony to be of little assistance in determining whether Home Depot had constructive knowledge of the hazard.
*101 As discussed below, throughout the day, two Home Depot employees inspect and work within the electrical department. One of these individuals, Jones, had been at the exact accident site approximately ten, but no more than twenty, minutes prior to plaintiff's fall and had seen no liquid on the floor. Very importantly too, a competitor's price checker had been visiting the store at the time of the accident. That individual, David Morton, who worked for Lowe's, testified that he had been on the aisle in question some twenty to thirty seconds prior to the incident, but saw no water there. Accordingly, inasmuch as the hazard did not exist only moments before the accident, defendant could not have known about it, and, thus, did not possess constructive knowledge.
Our examination of the record, also reveals that Home Depot exercised reasonable care to maintain its premises in a safe condition. Whether a merchant's periodic protective measures are reasonable must be determined in light of the circumstances of each case, taking into consideration the risk involved, the type and volume of business, the floor space utilized for customer service, the time of day, the section of the store, and other such factors. Rudd v. Atlas Processing Refinery, 26,048 (La.App. 2 Cir. 09/21/94), 644 So.2d 402, writ denied, 94-2605 (La.12/16/94), 648 So.2d 392. In this regard, we note that the accident occurred in a hardware store, not a grocery. Thus, the hazards typically presented in such an establishment (food, ice, cooking oil, etc.) are not present here. Nor did plaintiff encounter a puddle of water near a facility's entryway on a rainy day.[5] Instead, the accident transpired well inside the building, in the electrical department, and away from Home Depot's only water hookups in the garden area and the employee break room.
The electrical department consists of two aisles, each approximately fifty-five to sixty feet long, and a fan section. Two employees are placed there, as stated, and are responsible for both customer service and general maintenance. Because they are not assigned to a desk or particular site, these individuals are continuously walking the department during their shift. They also, based on the testimony, consistently confine their activities to their assigned area. Furthermore, both the loss prevention supervisor and the store manager constantly traverse the entire store throughout the day, with the latter indicating that he probably passed through the electrical department six times each hour. Jones, the previously mentioned employee, recalled helping a customer with light bulbs prior to Whited's arrival on the day in question. He then assisted plaintiff in procuring a price quote on wire and, next, offered service to yet another store patron. In his estimation, he had been at the accident site approximately ten, but no more than twenty, minutes prior to plaintiff's fall.
Considering the nature of this business establishment, to have two employees monitoring a relatively small area, coupled with continual store inspections by two managers, demonstrates reasonable care. In fact, contrary to Whited's arguments, these protective procedures are far more exhaustive than would be the case with a single person in charge of checking such a large facility.
Beyond all of this, and for whatever purpose it may serve, we are convinced that the jury well understood that their answers to the interrogatories would result in a judgment adverse to plaintiff. Specifically and clearly, the verdict form instructed that deliberations cease with the affirmative answer to interrogatory number six, leaving unanswered all questions concerning the apportionment of fault and the assessment of damages.

CONCLUSION
Accordingly, having determined that plaintiff failed to sustain his burden of proof under La.R.S. 9:2800.6, we affirm the district court judgment at his costs.
AFFIRMED.
BROWN, J., dissents with reasons.
*102 BROWN, Judge, dissenting.
The electrical department covered two sixty feet long aisles and a fan section. Only one of the two employees working in the electrical department on the date of the accident testified. That employee, Roy Jones, had not been on the aisle where the fall occurred for twenty minutes. Jones was waiting on another customer in another area when he heard the fall. Plaintiff, 6'3" and 250 lbs, hit the floor with such force that the noise and shock alerted others to the fall. Jones, who discovered plaintiff lying unconscious on the floor, called for assistance. The store manager examined the puddle of liquid immediately after the accident and determined that it was approximately two feet by two feet in size and appeared to be almost dry. No liquids were stocked in the electrical department and customers were not allowed to bring in cokes, water, etc; however, the employee break room was in close proximity to this area.
Home Depot kept no logs of its inspection and cleaning of the store. Thus, proof was limited to the testimony of the employees and others assisting after the fall. Consequently, credibility determinations were crucial and particularly within the province of the trial jury. As noted, one of the employees who allegedly worked this area of the store did not testify and the other, Roy Jones, had not specifically inspected the area although he had previously been on the aisle. We should not speculate from the cold record. David Morton, who was moving throughout the store checking prices, said that he saw no water on the floor twenty seconds before he heard the fall. At that time, Morton had moved onto another aisle. It does not, however, follow that the hazard occurred within this twenty seconds. The jury either did not accept Morton's testimony or found it more logical that Morton, who was busy checking his competitor's prices, failed to see the hazard. Morton's attention was directed to the merchandise on the shelves and, like plaintiff, had no reason to look at the floor.
The trial jury specifically answered factual interrogatories and found that the premises presented an unreasonable risk of harm to Billy Whited and that Home Depot either had knowledge of the condition or that this condition had been present for such a period of time that Home Depot should have known. The record easily supports this factual finding.
The jury was asked and answered in the affirmative the question concerning Home Depot's actual or constructive knowledge of the hazard. The next interrogatory (No. 6) to the jury was confusing. It asked if the store had taken reasonable protective measures to keep its premises free of substances that might cause a patron to fall; however, if the store had knowledge, as the jury found, and did nothing, the store could not have exercised reasonable care. Obviously, this inquiry, posed at this point in the verdict form, was misleading and the jury's answer to it was inconsistent. In Chambers v. Graybiel, 25,840 (La.App. 2d Cir. 06/22/94), 639 So.2d 361, this court stated:
An inconsistent verdict, however, must be read as a whole, with the rule that the judgment shall be just, legal and proper upon the record on appeal, La.C.C.P. art. 2164; Parliman v. Kennelly, 520 So.2d 445 (La.App. 5th Cir.1988). The court may refer to the entire record to construe an ambiguous verdict. Rodrigue v. Ziifle, 288 So.2d 630 (La.1974).
In light of the jury's factual finding that the store had actual or constructive knowledge of the spill, Interrogatory No. 6 was misplaced, confusing and should be disregarded. This interpretation, which conforms the jury's factual findings with the record considered as a whole, is logical and fair. Such a factual finding should then be reviewed only to determine whether it is manifestly erroneous or clearly wrong. Although not clearly wrong, it is in conflict with the general verdict.
LSA-C.C.P. Art. 1813 provides that when answers to interrogatories are inconsistent with the general verdict, the trial court may enter judgment in accordance with the answers to interrogatories, notwithstanding the general verdict, or may return to the jury for further consideration, or grant a new trial. What the trial court cannot do is render judgment in accordance with the general verdict, *103 Diez, supra, and neither should the appellate court.
Even if reviewed de novo, a logical, reasoned examination of the record compels a verdict for plaintiff. To speculate that the spill occurred within twenty seconds of the fall severely stretches good sense. Plaintiff's expert's testimony concerning the time the substance remained on the floor was nothing more than an explanation of intuitive knowledge.
I respectfully disagree and would enter judgment for plaintiff; at least, we should remand, as did the court in Diez, supra, for a new trial to resolve these serious factual conflicts.
Before HIGHTOWER, BROWN, WILLIAMS, STEWART and GASKINS, JJ.

On Rehearing
BROWN, Judge, on rehearing.
For the reasons set forth in the original dissent, we reverse and render judgment in favor of plaintiff. This interpretation conforms the jury's factual findings with the record as a whole. The evidence supports the factual determinations made by the jury that the premises presented an unreasonable risk of harm and that Home Depot had knowledge or should have known of this condition.
La.C.C.P. Art. 1813 provides that when answers to factual interrogatories are inconsistent with the general verdict, the trial court may enter judgment in conformity with the answers to the interrogatories, or return the jury for further consideration, or grant a new trial. Diez v. Schwegmann Giant Supermarkets, 94 1089 (La.App. 1st Cir. 06/23/95), 657 So.2d 1066, writ denied, 95-1883 (La. 11/17/95), 663 So.2d 720. Obviously an appellate court has only two options. At oral argument, both sides agreed that the record was complete and that this court could and should render judgment rather than grant a new trial.

Comparative Fault
Alternatively, Home Depot argues that the accident was caused by the sole fault of plaintiff in failing to avoid an open and obvious hazard. A merchant must exercise reasonable care to keep floors and aisles free of hazardous conditions; however, a patron in a self-service store may reasonably assume that the aisles and walkway are clear for passage and focus on the displayed merchandise, not the pathway. Perez v. Wal-Mart Stores, Inc., 608 So.2d 1006 (La.1992).
Defendant presented the testimony of David Morton, who stated that he had walked down this aisle seconds before plaintiff's fall. Morton, who worked for a competing business, was checking prices and did not see the hazard. Although Morton was not a customer, he was doing exactly what defendant wanted its customers to do, look at the displayed merchandise.
Plaintiff was a potential customer who had visited the electrical section and received an estimate for materials. Plaintiff was reading the estimate and walking down the aisle in the electrical section when he slipped in the liquid and fell. Because he was reading the estimate given by defendant, plaintiff did not see the liquid spill; however, plaintiff was doing exactly what defendant wanted him to do and reasonably, could assume that the aisle was free of hazards. Under these particular circumstances, we cannot find that plaintiff was at fault.

General Damages
General damages involve mental and physical pain and suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which can not be definitively measured in monetary terms. Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1135 (La. 1991).
There is no mechanical rule for determining general damages; the facts and circumstances of each case control. Panzico v. Price, 26, 232 (La.App. 2d Cir. 05/10/95), 658 So.2d 1310.
Plaintiff was taken to the Doctors Hospital emergency room on January 13, 1992, the date of his fall at Home Depot. The records from Doctors Hospital include a customer authorization form filled out by defendant's *104 employees; this form indicates that plaintiff "slipped on some water, fell on his head, neck and lower back." The emergency room doctor's diagnosis was head trauma, cervical and lumbrosacral strain.
Plaintiff first sought treatment from Dr. Harold Bicknell, an Orthopedic specialist, on January 15, 1992, two days after his accident. Dr. Bicknell found marked tenderness and evidence of muscle spasm in plaintiff's neck and back. Dr. Bicknell, noting the severity of his injuries, had plaintiff begin physical therapy at that time.
On February 5, 1992, Dr. Bicknell noted that plaintiff was still in pain and unable to return to work in construction. Physical therapy was continued and oral steroids were prescribed. Two weeks later, plaintiff was still experiencing severe pain and Dr. Bicknell gave him an anti-inflammatory injection.
There was no change in diagnosis on March 16, 1992, and though Dr. Bicknell felt that plaintiff was gradually improving, he would not release him to return to work. An MRI ordered on April 8th revealed mild disc bulging and nerve impingement at L4-5. Mild improvement was observed on April 29th and Dr. Bicknell noted plaintiff's anxiety and desire to return to work; however, the doctor would not release plaintiff to return to his employment because of continued muscle spasm.
On May 6, 1992, plaintiff requested a full release to return to work. Dr. Bicknell, though reluctant, approved plaintiff's request at that time. On May 13th, Dr. Bicknell's examination revealed evidence of tightness in plaintiff's lumbar spine muscles. Five months post-accident, on June 17th, Dr. Bicknell noted that though plaintiff was not yet completely healed, he was making progress and he felt that plaintiff could begin working again.
Approximately one year later, on June 30, 1993, Dr. Bicknell observed that plaintiff was experiencing occasional back pain, but that his symptoms were relieved with medication. Because of recurrent headaches, however, plaintiff was referred by Dr. Bicknell to a neuropsychologist in August 1993. Dr. Ronald Goebel found plaintiff to be experiencing anxiety and depression, "situational adjustment disorder in association with chronic pain." The following is taken from Dr. Goebel's notes:
What's interesting about this man is that he doesn't allow his pain to stop him doing what he has to do.... He's continuing to do what he has to do in spite of his pain.... [H]e's returned to gainful employment and he's trying to pay his bills and he's trying to get on with his life; and he's doing it with these ... annoyances of chronic pain and periodic memory disturbance where he just can't concentrate on his job and may become forgetful and forget to do some things which he finds very embarrassing.
Larry Larsen, plaintiff's physical therapist, stated that plaintiff experienced a lot of muscle spasm through the course of his treatment, which included electrogalvanic stimulation, electroaccuscope and the application of cold packs. According to Larsen, plaintiff was very cooperative and eager to return to work as soon as possible.
Though his other injuries dissipated, plaintiff testified that he continued to experience headaches and that as of trial, almost two years after the accident, he was having them twice a week. Dr. Bicknell, Dr. Goebel and the physical therapist, Larry Larsen, described plaintiff as a patient desirous of getting on with his life in spite of constant pain. The jury found that plaintiff was in fact injured in the accident. Defendant presented records showing that in 1986, six years prior to the present incident, plaintiff was involved in a minor automobile accident and was seen at the hospital and released. Plaintiff, however, testified that he had no lingering problems from that 1986 accident.[1]
In making an initial award of damages at the appellate level, we are not limited to an award of either the lowest or highest amount we would affirm. Instead, we set the *105 award in an amount which is just compensation for the damages revealed by the record. Wall v. American Employers Insurance Co., 386 So.2d 79 (La.1980); Panzico, supra.
Considering the particular facts and circumstances of this case, we award plaintiff $30,000 in general damages.[2]

Special Damages
Plaintiff seeks an award for past medical expenses and lost wages. The record reveals that because of his accident, plaintiff incurred medical expenses totaling $8,249.05. This amount is recoverable in full. Thames v. Zerangue, 411 So.2d 17 (La.1982).
The burden is on plaintiff to prove that because of his injuries, he has suffered a loss of income. Warner v. Great Atlantic & Pacific Tea Co., Inc., 583 So.2d 61 (La.App. 2d Cir.1991). Plaintiff must prove the length of time he missed work due to the accident. Thibodeaux v. USAA Casualty Insurance Co., 93-2238 (La.App. 1st Cir. 11/10/94), 647 So.2d 351; ANMAC Foundation Inc. v. St. Patrick Hospital of Lake Charles, 594 So.2d 951 (La.App. 3d Cir.1992). Other considerations include plaintiff's physical condition prior to the accident, his work record, the extent of his earnings, and the probability that he would have earned similar wages in the future but for his disability. Warner, supra.
Plaintiff, aged 27 at the time of trial, had worked construction since quitting high school at age sixteen. At the time of his accident on January 13, 1992, plaintiff was employed with Harbert Construction, earning $14.75 an hour. Because of plaintiff's inability to return to work, he was terminated by his employer on May 27, 1992. Plaintiff's efforts to find another job were not immediately successful and he performed temporary construction work until finding a permanent job with Triple L Construction in October 1992.
Plaintiff's income tax return for 1991, the year before his accident, was filed into evidence. Plaintiff earned $22,899 in 1991. As a result of his injuries and subsequent layoff, plaintiff was unable to earn wages for approximately eight months. We feel that 8/12 of $22,899, or $15,266, is the appropriate measure of plaintiff's lost earnings.

DECREE
For the reasons set forth herein:
IT IS ORDERED, ADJUDGED and DECREED that there be judgment in favor of plaintiff, Billy Whited, and against defendant, Home Depot USA Inc., in the full sum of $53,515.05, together with legal interest from date of judicial demand. Costs both here and below are taxed against defendant.
HIGHTOWER, J., dissents with written reasons.
GASKINS, J., dissents for the reasons assigned by HIGHTOWER, J.
HIGHTOWER, Judge, dissenting.
While de novo review is warranted as explained in the original opinion, that circumstance does not stem from an inconsistency between interrogatory answers and the general verdict. See La.C.C.P. Art. 1813. To the contrary, the factual finding that Home Depot exercised reasonable care clearly reflects the jury's intention to reject plaintiff's demands, as ultimately accomplished by the trial court's judgment to that effect.
Much more importantly, however, plaintiff's evidence falls woefully short of sustaining his burden of proof on either the constructive notice or lack of reasonable care issues. Thus, for the reasons assigned in the original majority opinion, I respectfully dissent.
NOTES
[1] The jury responded to special interrogatories as follows:

1. Did Billy Whited fall at the Home Depot on January 13, 1992? YES
2. Was Billy Whited injured by a fall at the Home Depot on January 13, 1992? YES
3. Did the premises of the Home Depot Store present an unreasonable risk of harm to Billy Whited under the circumstances which harm was reasonably foreseeable? YES
4. Did Billy Whited fall and suffer injury as a result of the condition of the premises of Home Depot? YES
5. Did Home Depot have knowledge of the condition of the premises which caused the injury to Billy Whited or had this condition been present for such a period of time that Home Depot should have known of the condition? YES
6. On January 13, 1992 did Home Depot take reasonable protective measures to keep its premises free of substances that might cause a patron to fall? YES
[2] As noted, the panel answered this question in the affirmative, thus ultimately finding for the defendant on the question of liability.
[3] Suppose, for example, a customer slips in a puddle of liquid on the merchant's premises at the moment an employee is in the process of mopping the spill.
[4] Bruce Lewis, the store manager, examined the spot immediately after the accident and, in deposition, commented that it appeared to be almost dry. He explained at trial, however, that he meant that the water had been smeared over the floor, i.e., it was not undisturbed. Moreover, plaintiff indicated that his fall resulted in his clothes soaking up some of the water.
[5] Although Whited believed it had rained, he conceded that the floors were not particularly wet and observed no indication of people tracking water into the store.
[1] Defendant's arguments that plaintiff joked that he almost had a lawsuit when he partially fell in a bank and may have improperly claimed his two children as deductions on his income tax return have no bearing on the issue of damages.
[2] See Patin v. Imperial Lloyds Ins. Co., 95-841 (La.App. 3d Cir. 01/17/96), 670 So.2d 238; Andrus v. Board, 626 So.2d 1224 (La.App. 3d Cir. 1993).