334 So.2d 549 (1976)
Peter J. PARFAIT
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS.
No. 10749.
Court of Appeal of Louisiana, First Circuit.
May 24, 1976.
Rehearing Denied June 30, 1976.[*]
Norman L. Sisson, Jonathan C. Harris, Wm. J. Doran, Jr., Robert J. Jones and David K. Balfour, Highway Dept., Baton Rouge, for appellant.
Grady C. Weeks and Douglas J. Authement, Houma, for appellee.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
ELLIS, Judge:
This is a suit by Peter J. Parfait against the State of Louisiana, through the Department of Highways, for damages for personal injuries suffered by him in an automobile accident. After trial on the merits, judgment was rendered in favor of plaintiff for $615,000.00 and defendant has appealed.
The accident happened on September 20, 1973. Mr. Parfait was driving north on State Highway 57, a two lane, paved highway, *550 with a five to six foot shell shoulder on either side. An oncoming southbound vehicle pulled into the northbound lane of traffic, forcing Mr. Parfait to take to the shoulder to avoid a collision. While on the shoulder, plaintiff lost control of his vehicle, which swung to the left across the highway and struck two trees. Mr. Parfait was very seriously injured.
It is plaintiff's position that he lost control of his automobile because the defendant had not properly maintained the shoulder. He testified that the shoulder was very rough, and that after he had driven along for some distance his car struck a deep hole, which swung his car to its left, spun his steering wheel out of his hands, and threw him to the seat. When he regained a sitting position, it was too late for him to avoid striking the trees.
Other witnesses testified that, in the area where the accident happened, there was a five to six inch drop off from the surface of the pavement to the shoulder and a number of large holes, from eight to twelve inches deep. One witness, whose home was adjacent to the accident site, testified that the holes were there, had been there for some time before the accident, and were still there at the time of trial. She testified that the only maintenance carried out by the Highway Department was to occasionally put shovelfuls of shells into the holes.
Sergeant Claude J. Hebert, who investigated the accident, testified that he did not believe that the condition of the shoulder contributed to the accident. However, he did testify that there was about a five inch drop off at the edge of the pavement.
Highway Department employees stated that the shoulder was inspected once or twice a week for defective conditions, that these were remedied when discovered. Their records showed that no maintenance had been carried out at the site of the accident other than occasional filling of holes by shoveling shells into them. One of the employees testified that cars were continually running off the road at that site because of a slight curve in the road just to the south. They also testified that a six inch drop off at the edge of the pavement would constitute a dangerous condition.
Considering the foregoing testimony, we find no manifest error in the conclusion of the trial judge that a dangerous condition existed at the point of the accident. The frequent inspections made by the Department and their knowledge that vehicles frequently ran off the road onto the shoulder at this point, thus subjecting it to greater wear, bear out his conclusion that the Department had notice of the existence of the condition.
We further agree with the trial judge that no contributory negligence on the part of plaintiff was shown. He was driving about 45 miles per hour, and took the only evasive action available to him when faced with an oncoming car. His loss of control of his vehicle was caused by the condition of the shoulder and not by any deficient driving technique on his part.
Plaintiff was awarded $615,000.00 damages by the trial judge, and the defendant claims the award to be excessive.
As a result of the accident, plaintiff suffered a fractured left hip, and a serious fracture of both sides of his pelvis. These two injuries were treated conservatively and healed uneventfully, leaving a five percent disability of the left leg.
Plaintiff also suffered a lacerated spleen, which was removed surgically, and his prostatic uretha and membranous uretha were completely severed, as were all of the nerves and blood vessels in that area. As a result, plaintiff lost his ability to urinate, and lost his sexual capacity. A tube was put into his bladder so that it would drain, which he wore for over a year, and which caused consistent discomfort and constant infection and incapacitation.
*551 In October, 1974, an operation was performed which restored his capacity to urinate, except for a loss of control under stress. The operative procedure necessitated the removal of the front bones of the pelvis, and, as a result, plaintiff is incapacitated to perform strenuous labor for the rest of his life. It is also "very likely" that he will never regain his sexual capacity.
Plaintiff had been advised by his doctor to seek vocational training in some area suited to his physical capacities, but, as of the time of trial, he had not done so. Prior to the accident, he had been employed as a tacker welder, for $2.75 per hour. During the period between the accident and trial, he lost $11,567.00 in wages, without allowing for any deductions for taxes or social security.
His urologist testified that it was possible that he would need another corrective operation in the future, and that he would have to be followed by a urologist for at least ten or fifteen years, at a cost of some $400.00 to $500.00 per year.
Since the trial judge failed to itemize his award, we do not know how he arrived at the total figure of $615,000.00. However, it would appear from the briefs filed below that he awarded plaintiff substantially all that he asked for and proved. Our review of the record shows that plaintiff proved special damages of $14,230.20, and future medical expense for which we believe $7,000.00 would be a reasonable award. For pain and suffering resulting from his injuries, including the fractures, loss of his spleen, and the impairment of his urinary and sexual functions, we think an award of $300,000.00 would be reasonable, and apparently compatible with the award below.
Plaintiff showed a gross loss of wages up to the time of trial of $11,567.00. Of course, he would not have realized this amount, because of deductions for social security, taxes and hospitalization. He has shown that he is permanently disabled to perform the duties of a tacker welder, but there is no evidence in the record whatever which indicates that he is either physically or mentally unable to perform other less strenuous jobs. Under that circumstance, we believe it would be unrealistic to award loss of wages for the rest of his working life and we find the trial judge committed manifest error in so doing. However, he should be given a period of two years within which to obtain training for another occupation. Considering plaintiff's earning capacity prior to the accident, we think an award of $25,000.00 should compensate him for lost wages, past and future, while he prepares himself for another less strenuous occupation.
The judgment appealed from is therefore amended by reducing the amount thereof to $346,230.00, and as amended, it is affirmed. Costs of this appeal shall be borne equally by the parties. All other costs shall be borne by defendant to the extent permitted by law.
AMENDED AND AFFIRMED.
NOTES
[*] Lottinger, J., dissenting from the refusal to grant a rehearing.