346 So.2d 253 (1977)
George PROFIT
v.
Stoney R. LINN et al.
No. 11286.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
*254 Sidney C. Sundbery and Stanwood R. Duval, Jr., Houma, for plaintiff and appellant.
Philip J. McMahon, Houma, for defendants and appellees.
Paul M. Batiza, Thibodaux, for intervenor.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
COVINGTON, Judge.
This is a suit by George Profit against Stoney R. Linn, Berry Brothers General Contractors, Inc., and The Travelers Indemnity Company for damages for personal injuries suffered by the plaintiff in a motor vehicular accident. Southern Farm Bureau Casualty Insurance Company, as the workmen's compensation carrier, intervened to recover medical expenses and compensation paid by it.
On January 25, 1974, the plaintiff, while employed by Louis LeCompte as a bagasse truck driver, was driving a tractor-truck in an easterly direction on U. S. Highway 90 in LaFourche Parish, Louisiana, when at approximately 1:10 P.M., his vehicle was struck by a pick-up truck driven by Stoney R. Linn, who was employed by Berry Brothers General Contractors, Inc., the owner of the truck, which was insured by The Travelers Indemnity Company. The vehicle driven by Linn passed another vehicle, and as Linn crossed back into his lane of traffic he lost control and his vehicle spun into Profit's lane of traffic, colliding head-on with the Profit vehicle. The liability of the defendants, Linn, his employer, and Travelers, is thus not in serious dispute. Johnson v. McKay, 306 So.2d 417 (La.App. 3 Cir. 1975).
As a result of the accident, Profit sustained severe injuries. The extent of the plaintiff's injuries and the damages he suffered as a result thereof was the primary question which the trial court had to resolve.
After a three-day trial, the trial court awarded the plaintiff the sum of $83,507.00 as damages. The plaintiff moved for a new trial, asserting that the judgment was erroneous as to quantum. The trial court denied the new trial, and the plaintiff has appealed, seeking an increase in the award. The defendants have not appealed, nor have they answered the appeal.
At the time of the accident George Profit was 39 years old, had little formal schooling and was only trained to manual labor. He was earning about $10,000.00 a year as a truck driver.
As a result of the accident, he suffered a back injury which was diagnosed as a herniated lumbar disc. Profit was examined by several doctors, and on September 24, 1974, a laminectomy was performed by Dr. Dexter Gary. On March 21, 1975, about six months after the operation, Profit began to receive physical therapy. He continued to see Dr. Gary for several months.
In reaching his decision as to the amount of the award, the trial judge remarked in his written reasons:
"The doctors are all in accord as to the nature of plaintiff's injuries, and while their opinions vary somewhat as to the extent of permanent disability, the Court feels that the plaintiff has proven by a preponderance of the evidence that he *255 will never be able to return to strenuous physical labor but must be satisfied in the future with light work. Since Dr. Gary, his primary treating physician, is more familiar with the nature and extent of plaintiff's injuries and felt that as of April 28, 1975, approximately seven months after the laminectomy, that plaintiff was physically in shape to return to light work, an award of $7,500.00 should be adequate for the initial severe pain and suffering suffered by the plaintiff. (Morille T. Guidry vs. Canal Insurance Co., et al. # 10,107 1st Circuit) (313 So.2d 860, La.App. 1 Cir. 1975).
"Proven medical expenses stipulated and admitted in evidence totaled $3,633.48[1] which were paid by the intervenor, Southern Farm Bureau Casualty Insurance Company. Intervenor, Southern Farm Bureau Casualty Insurance Company, also paid plaintiff the sum of $7,150.00 in compensation payments from February 2, 1974 through March 24, 1976.
"Plaintiff, George Profit, in 1973 had an income of $10,449.00. This is an average monthly income of $870.75. According to Dr. Gary's testimony, plaintiff, George Profit, was disabled for a period of 15 months. For loss of wages up through the time of trial, an award of $13,061.25 will be made.
"Plaintiff has shown by a preponderance of the evidence that he will never be able to return to strenuous physical labor but there is no evidence in the record whatsoever which indicates that he is either physically or mentally unable to perform other less strenuous jobs. Plaintiff is a 39 year old male and except for his back injury, is in good health. He stands approximately six feet tall and must weigh approximately 210 pounds. Under these circumstances, the Court believes that it would be unrealistic to award loss of wages for the rest of his working life. He should be given a period of two years within which to obtain training for another occupation. Considering plaintiff's earning capacity prior to the accident, I think an award of $25,000.00 should compensate him for loss (of) wages, past and future, while he prepares himself for another less strenuous occupation. (See Peter Parfait v. State of Louisiana, through the Department of Highways, # 10749 1st Circuit) (334 So.2d 549, La.App. 1 Cir. 1976).
"Plaintiff contends that additional surgery will be necessary and it has been stipulated that the cost of such surgery would be $2,911.00. A review of the medical evidence in this record clearly indicates that the plaintiff has failed to prove by a preponderance of the evidence that George Profit will, in fact, need additional surgery. See depositions of Drs. Gary, Phillips and Jackson. In order to give the plaintiff every possible chance to recover as fully as possible, the Court will allow plaintiff the sum of $2,911.00 for future medical expenses. This, together with the $25,000.00 awarded plaintiff for loss of wages, past and future, will allow plaintiff to prepare himself for another less strenuous occupation. It should be noted that plaintiff was advised to seek vocational training in some areas suited to his physical capacities, but, as of the time of the trial, he had not done so.
"In addition to the above, the Court will award plaintiff the sum of $35,000.00 for pain and suffering, past, present and future. Accordingly, we summarize plaintiff's award as follows:

For physical pain and suffering
through the date of trial ________$ 7,500.00
For loss of wages up through
the time of trial ________________$13,061.25
For future medical expenses ______$ 2,911.00
For loss (of) wages, past and future,
while in preparation for
a less strenuous occupation_______$25,000.00
For pain and suffering, past,
present and future________________$35,000.00

*256
Amount stipulated in Plaintiff's
Exhibit No. 13 and Plaintiff's
Exhibit No. 14__________________$34.75
 TOTAL____$83,507.00

"There will therefore be judgment for this amount with defendant to pay all costs of these proceedings. Included as costs are the expert fees of Dr. Gary, Dr. Phillips, Dr. Chisholm and Mr. Cranford at the sum of $75.00."
The appellate review of awards for general damages is limited. An abuse of the trial court's "much discretion" must be clearly demonstrated from the record before an appellate court can disturb a trial court's judgment. LSA-C.C. art. 1934(3); Revon v. American Guarantee & Liability Insurance Co., 296 So.2d 257 (La.1974). Each personal injury must be evaluated according to its own peculiar facts and circumstances. See Riley v. Frantz, 253 So.2d 237 (La.App. 4 Cir. 1971). Since the trial judge has a closer contact with the injured party, he is better able to estimate his actual loss. See Canter v. Koehring Company, 283 So.2d 716 (La.1973); Gaspard v. Le Maire, 245 La.239, 158 So.2d 149 (1963).
In the recent case of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), the Supreme Court has explicated the character of appellate review of quantum awards, in the following language:
"Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded the court. Bitoun v. Landry, 302 So.2d 278, La.1974; Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803, La.1974. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
The back injury has resulted in some permanent partial physical function disability. Dr. Dexter Gary, an orthopedic surgeon, who performed the laminectomy on Profit and who was the treating physician, estimated his disability at 15% of the body as a whole. Dr. Stuart I. Phillips, an orthopedic surgeon, who examined Profit for evaluation purposes, estimated the disability at 20%, while Dr. John D. Jackson, a neurological surgeon, who also examined Profit for evaluation purposes, estimated his disability at 10% of the body as a whole. Each of them related the disability to the back impairment. They all seem to agree that the plaintiff can return to work of a type less strenuous than that which he was doing prior to the accident. The main restriction on his work activity is that the plaintiff can not lift anything heavier than 35-50 pounds.
Dr. Dexter Gary first examined Profit on June 14, 1974, some five months after the January 25th accident. Dr. Gary considered that he had a low back injury. Dr. Gary again saw the plaintiff on July 15, 1974, about the same complaints. It was Dr. Gary's impression at that time that the plaintiff had degenerative disc problems and that a myelogram would be needed if the symptoms persisted. The plaintiff was next seen by Dr. Gary on September 12, 1974; and at that time the doctor noted that Profit had had a myelography examination which revealed a herniated disc at L-4-5 level. The doctor scheduled the plaintiff for a laminectomy, which was performed on September 24, 1974. Post-operatively the plaintiff did well and his recovery was uneventful. In due course, the plaintiff began physical therapy to strengthen his back. When Dr. Gary examined the plaintiff on April 28, 1975, he considered that Profit had an impairment of 15% of the body.
In July of 1975, Dr. Gary found his condition to be unchanged and indicated to Profit that he should be discharged with the physical impairment of 15% of the body as a whole. Dr. Gary expressed the opinion that Profit was able to drive a truck, but should restrict his lifting activities.
On October 2, 1975, the plaintiff was examined by Dr. Stuart I. Phillips, an orthopedic *257 surgeon. Dr. Phillips rated Profit "as a 20 per cent disability of the back secondary to the effects of the accident, subsequent surgery," and rated him as unable to do work which entailed "working in a stooped position or bending and stooping repetitively." Dr. Phillips considered that Profit was able to work as a truck driver, but that he should not lift weights heavier than 50 pounds.
Dr. John D. Jackson, a neurological surgeon, examined Profit on April 19, 1976. Dr. Jackson rated the plaintiff as having a 10% permanent partial disability of the body as a whole, but that he could probably still drive a truck if he did not have to do any heavy lifting. Dr. Jackson found no paraspinous muscular weakness or atrophy. The sensory examination revealed decreased sensation over the lateral aspect of the left foot, leg and thigh to pin scratch and light touch. There was also some limitation of motion to the lumbar spine. These findings were consistent with Profit's medical history. Dr. Jackson found the remainder of the neurological examination to be normal.
In cases of this nature, a plaintiff must prove that either he can do no other work, or although with his physical disability he is able to perform other work, he will suffer a loss of income. See Parfait v. State. through Department of Highways, 334 So.2d 549 (La.App. 1 Cir. 1976). Even though there is no evidence in the record as to the exact amount of the plaintiff's loss of future income, there is ample lay and expert testimony to prove that he is no longer able to perform the type of work that he had been doing and that he will in fact suffer a loss of income. The plaintiff has some impairment of bodily functions due to the back injury and subsequent surgery, but this impairment mainly affects the plaintiff's ability to lift heavy weights. The record does not establish that future surgery will be required; nor does it establish that the plaintiff has been removed from the labor market, or his loss of income with exactitude.
The plaintiff was granted an award by the trial court which took into consideration all of the factors that can properly be considered in fixing an award for personal injury damages. While perhaps conservative, the trial court's award was not so disproportionate to awards for injuries of this nature as to constitute an abuse of his discretion.
For the foregoing reasons, the judgment of the trial court is increased to a total of $87,140.48 by adding $3,633.48. As thus amended, it is affirmed at appellant's cost.
AMENDED AND AFFIRMED.
NOTES
[1] Counsel, in oral argument before this court, agreed that this sum is due the plaintiff. The trial court inadvertently omitted it in its itemization of the total award. Therefore, we will amend the judgment by including this item.