422 So.2d 1302 (1982)
Joseph D. HOLMES, Sr.
v.
TEXACO, INC. and Olden P. Breaux.
No. 5-188.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1982.
*1303 Victor L. Marcello, Donaldsonville, for plaintiff-appellee.
Wiley G. Lastrapes, Jr., New Orleans, for defendant-appellant.
Before BOUTALL, BOWES and CURRAULT, JJ.
BOWES, Judge.
An automobile accident involving the plaintiff, Joseph Holmes, and the defendant, Olden Breaux, occurred on September 13, 1978. The defendant Texaco, Breaux's employer, was sued on the theory of respondeat superior. After a trial on the merits, there was judgment in favor of the plaintiff, holding the defendants solidarily liable for the negligence of Breaux, in the amount of $175,000.00 for general pain and suffering; $252,643.41 for past and future wage losses; and $10,183.46 for medical expenses. The trial court later amended the wage award to correct an error in calculation to $216,133.11 for past and future wage loss.
Defendants do not appeal the issue of liability, nor do they argue the applicability of the theory of respondeat superior. It is therefore unnecessary for this court to discuss the facts of the accident itself.
Defendant does strenuously contest the quantum of damages awarded, and sets forth four specifications of error:
1. The District Court's award of $175,000 general damages was grossly excessive and an abuse of its discretion.
2. The District Court erred by awarding future lost income in any amount.
3. The District Court erred in refusing to give a credit against lost future income to offset what plaintiff would earn at a minimum wage or other job.
4. The District Court erred in accepting actuarial computations that were an inaccurate measure of lost wages because they started from too high a base, used an unrealistic retirement date and a low discount rate, and was calculated on gross income, not net income after taxes.
We shall address these issues as follows.
Initially, defendant argues that the $175,000.00 awarded plaintiff for pain and suffering was a gross abuse of discretion. In support of this contention, defendant cites numerous cases in which lesser amounts were upheld as sufficient, or reduced as having been excessive.
In his reasons for judgment, the trial judge concluded that the plaintiff suffered at least three, and possibly five, ruptured discs; that he underwent major surgery twice; had been hospitalized on some five occasions, and treated by some six different physicians. He will have a permanent ringing in his ears (with a resultant *1304 loss of hearing). He is unable to participate in normal recreational activities that he enjoyed prior to the accident. Delineating the above reasons, the lower court concluded that plaintiff was entitled to the $175,000.00 award. We cannot say this was manifestly erroneous, nor do we feel compelled to wade through case after case of similar and dissimilar awards.
And whether two cases are so similar as to produce like quantum judgments is hardly discernible by gleaning the facts of the comparable decision from simply a written opinion of an appellate tribunal. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
Civil Code article 1934(3) and numerous cases grant the court much discretion in awarding damages. Williams v. Pelican Natural Gas Co., 187 La. 462, 175 So. 28 (La.1937) and Neville v. Johnson, 398 So.2d 111 (La.App. 3rd Cir.1981) are early and later expressions of that maxim. We affirm this portion of the trial court's decision.
Appellants also argue that the district court erred in accepting actuarial computations that started from too high a base, erred on unrealistic retirement date, and was calculated on gross income.
The judgment reflects an award of $216,133.11 for future wage losses. It appears that the court used the retirement age of 65, although the testimony of plaintiff's expert and exhibit # 1 shows the value at age 65 to be $224,432.27, not $224,443.41, as in the original judgment. The amended judgment credits plaintiff for $8,310.30, which he actually earned. The retirement age of 65 is certainly a reasonable one, the norm, and there is no evidence in the record to support defendant's conclusion that the plaintiff would not have been able to work until that time. Defendant's contention that "actual" retirement at Kaiser is age 62 is apparently based on the plaintiff's statement at trial that he (plaintiff) could not name anyone in his position who had worked past age 62. This hardly constitutes "evidence" to sustain defendant's point. Neither is the medical testimony of Dr. Ioppolo, relative to plaintiff's degenerative spinal condition, persuasive. Dr. Ioppolo did not venture an opinion as to whether or not the plaintiff would have been forced to retire earlier than age 65 were it not for the automobile accident. This court is not gifted with psychic abilities to foresee what will happen, and declines to speculate on the possibilities; there was nothing unrealistic in the trial court's use of the retirement age of 65.
It is proper to use gross income in computing wage loss. Green v. Farmers Ins. Co., 412 So.2d 1136 (La.App. 2nd Cir. 1982); Black v. Ebasco, 411 So.2d 1159 (La. App. 1st Cir.1982).
Defendant also contends that the expert calculations started from too high a base, using figures that were calculated in part from earlier years when there was substantial overtime at Kaiser, as opposed to low overtime available in 1978 and forecast for the future. The record reveals that the expert, Mr. Brady, used one year, from September 1977 through September 1978, to calculate projected income. In 1977, there were 300 hours of overtime; in 1978, overtime decreased to 86 hours. While this is certainly a dramatic change, the fact that the majority of time used by Mr. Brady fell in 1978 mitigates to a great extent the three and a half months of 1977 figured. There is no evidence in the record to indicate that overtime from 1978 through the present will decline further; the assumption or statement of defendant, that "no change is in sight" regarding increasing overtime, is too speculative to convince the court that the base used by Mr. Brady was too high. Other factors were enunciated by Mr. Brady, through which he determined expected increases in wages: average annual increase in weekly earnings, tax records of the plaintiff, and union wage scales, each of which indicated expected increases of 8.35% and higher. We find that the 8% expected increase on which Mr. Brady made his calculations was fair and conservative, and more than offsets any "inflated" overtime figures claimed by defendants.
*1305 Defendant contends additionally that the 7% discount rate used by Mr. Brady was too low, and that a higher discount rate of 10% would have been proper. Defendant offered no expert witness to affirm this figure, but rather seems to have derived it from a statement made by plaintiff's expert that certificates of deposit at the time of trial ran at 9.5%. Defendant alleges in his brief that "treasury bills have yielded anywhere from ten to fifteen per cent and intermediate government bonds have yielded close to that." (at page 17). This court does not dispute these statements, although the latter in particular seems to be more of defendant counsel's conclusion as much as actual fact. Defendant goes further in his argument, figuring the possible awards, if discount rates of 10% and 12% were used.
This court is not obliged to accept defense counsel as an economic expert in this matter, nor is it inclined to accept defendant's argument. A 7% discount rate is conservative, but in no way improper. Mr. Brady explained at trial that his calculations permitted the plaintiff to make investments that will return to him his annual income on an annual basis. A two-year certificate of deposit would guarantee his income two years hence; a six-month certificate would do so in six months. At the end of these time periods, interest rates, like the economy, change. In one-year certificates of deposit or passbook savings, a plaintiff would have access to the principal at the end of that year. In other words, the plaintiff has access to his yearly income every year, without gambling on the stock market or most other aspects of the economy. This court would not require more, or less, of the plaintiff. Mr. Brady used perfectly sound principles of investment, and insisted that his calculations were prudent. This court can find nothing in the record of this case to dispute this wisdom. Given the evidence and testimony at trial, to increase the discount rate would be to require the plaintiff to take certain risks. Considering that the money in question represents the majority of future earnings for Mr. Holmes, we are not prepared to do so. Further, in Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980), the Supreme Court approved an award in which a discount rate of 7% was used. Awards for lost wages are speculative by nature and cannot be calculated with mathematical certainty; the trial court necessarily must have much discretion in fixing lost wage awards. Black v. Ebasco, supra.
We find no abuse of discretion in the trial judge's acceptance of the economic expert's calculations of projected loss income for plaintiff through age 65.
However: "The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inference from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Only when the trial court abuses its broad discretion should the award be adjusted, up or down." Bitoun v. Landry, 302 So.2d 278 (La.1974).
We find defendant's argument that a credit for minimum wage should have been used to offset future lost income meritorious in this case. Although plaintiff himself testified that he could do very little without suffering pain and discomfort after a short period of time, the point is well taken that plaintiff's physician testified both in his deposition and at trial that he believed plaintiff could perform some sedentary work.
In Profit v. Linn, 346 So.2d 253 (La.App. 1977), the First Circuit held that a plaintiff, forbidden by his injury to do strenuous work, nevertheless, "In cases of this nature... must prove that either he can do no other work, or, although with his physical disability he is able to perform other work, he will suffer a loss of income."
We are mindful of the obligation of the defendant tortfeasor to show to what extent damages should be mitigated. Lucas v. Deville, 385 So.2d 804 (La.App. 3rd Cir. 1979). However, the record in this case discloses that plaintiff was offered in the past a job as supervisor, which would require *1306 no lifting, and turned it down because he did not want to take the responsibility; that plaintiff felt his age would make vocational training not "feasible"; and that his physician did not feel plaintiff was disabled from all work. There was no evidence contradicting Dr. Ioppolo on that point and it is a justifiable inference that plaintiff is able to do at least light or sedentary work. Therefore, we feel that plaintiff did not prove that he can do no other work within the meaning of Profit.
However, the record contains little to show the real employment opportunities for a man of plaintiff's age, education, and disabilities. We feel, therefore, that an amount equal to what plaintiff could earn at a minimum wage job is fair to both plaintiff and defendant. Accordingly, we find that the trial judge erred by not allowing a minimum wage offset, which amount was prefigured by plaintiff's economist and is a matter of record. Consequently, we reduce that portion of the plaintiff's award for future wage loss to reflect a credit for minimum wage employment to age 65. According to Mr. Brady, this present value of plaintiff's total expected income from minimum wage to age 65 would be $47,739.02.
For the reasons assigned, the judgment appealed from is amended to reflect the correction of the sum due for lost wages to $224,432.27, subject to a reduction of $47,739.02; all other portions of the judgment are affirmed.
AFFIRMED IN PART.
AMENDED IN PART.