No. 98-652

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 179

300 Mont. 348

8 P.3d 71

KAYE L. DOBROCKE,

Plaintiff and Appellant,

v.

CITY OF COLUMBIA FALLS,

Defendant and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James C. Bartlett, Kalispell, Montana

For Respondent:

Eric F. Kaplan, Kaplan & Chisholm, Columbia Falls, Montana

_____

Submitted on Briefs: June 17, 1999

Decided: July 6, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

1. ¶Kaye L. Dobrocke (Dobrocke) brought this action against the City of Columbia Falls (the City) in the District Court for the Eleventh Judicial District, Flathead County, for injuries she received when she tripped over a piece of barbed wire. The District Court granted summary judgment in favor of the City and Dobrocke appeals. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

2. ¶Dobrocke raised four issues on appeal which were reframed by the City into eight issues. We restate the issues as follows:

3. ¶1. Whether we should dismiss Dobrocke's appeal for failure to comply with Rule 4 (c) and Rule 54, M.R.App.P.

4. ¶2. Whether the City owed a duty to Dobrocke.

5. ¶3. Whether the District Court correctly held that the City's failure to have notice of the existence of the wire precluded relief against it as a matter of law.

6. ¶4. If the City did owe a duty to Dobrocke, whether the City breached that duty.

7. ¶5. Whether the City's conduct was the cause of Dobrocke's injuries.

8. ¶6. Whether the District Court correctly held that the City was not guilty of negligence *per se*.

9. ¶7. Whether the District Court correctly held that Montana's recreational use statute precludes relief against the City as a matter of law.

## Factual and Procedural Background

1. ¶On January 11, 1995, at approximately 6:30 p.m., Dobrocke left her home to take her two dogs for a walk along Twelfth Avenue West in Columbia Falls. Since there were no sidewalks in the area, Dobrocke normally walked along the edge of the street. However, on that night the street was slippery because of the weather. Consequently, Dobrocke walked along a grassy area next to the street. The grass was wet and there were intermittent patches of snow. The area was dimly lit by a streetlight across the road. Dobrocke did not have a flashlight with her and she did not look down at the ground as she walked.

2. ¶After walking about three blocks, Dobrocke turned around to return home. She had only walked a short distance when she tripped and fell to the ground, breaking her right elbow. The following day, Dobrocke noticed a tear in her shoe. Believing that she had snagged her foot on something, Dobrocke returned to the place where she fell and discovered a piece of rusted barbed wire imbedded in the ground.

3. ¶Several days after her injury, Dobrocke called the City to have the piece of barbed wire removed. She was told by a city employee that it would be removed right away. A few hours after making this call, Dobrocke observed that the wire had indeed been removed. Dobrocke later learned that a neighbor had erected a barbed-wire fence along this route in May or June 1992. Dobrocke concluded that the wire must have been there since that time.

4. ¶On September 30, 1996, Dobrocke filed a complaint against the City, since it owned the property on which Dobrocke was injured; Deloras Peters (Peters), the owner of the adjacent property; Bill Crawford (Crawford), the individual leasing the adjacent property from Peters; and John Doe Fencing Company. Dobrocke contended that the City was guilty of negligence for allowing a dangerous and hazardous condition to exist on a public right of way and negligence *per se* under § 81-4-105, MCA, for allowing a public nuisance. Dobrocke also contended that Peters and Crawford were guilty of negligence for creating a dangerous and hazardous condition by allowing the piece of barbed wire, which Dobrocke contended must have come from the construction of the fence on Peters' property, to lay in overgrown grass.

5. ¶Through discovery, Dobrocke learned that Crawford, rather than a fencing company, had erected the barbed-wire fence in 1992, thus, John Doe Fencing Company was eventually deleted from the caption in this case. In addition, by stipulation of counsel, this matter was eventually dismissed with prejudice as against Peters and Crawford.

6. ¶On January 27, 1997, the City moved for partial summary judgment arguing that it could not be guilty of negligence *per se* because it had not violated § 81-4-105, MCA. The City also moved for summary judgment with regard to the remaining general negligence claims on May 11, 1998. In its summary judgment brief, the City argued that it did not owe a duty to Dobrocke because, while a city does have a duty to keep its sidewalks and highways in a reasonably safe condition, Dobrocke was not walking on a sidewalk or highway, but rather, in an area not maintained by the City. The City also argued that Montana law requires that the City have notice of any defect before it can be held liable and such was not the case here.

7. ¶On July 16, 1998, the City amended its answer to include the affirmative defense that under § 70-16-302, MCA, the recreational use of property without giving the property owner valuable consideration makes the City immune from liability. Thereafter, on July 30, 1998, the City filed a supplemental summary judgment brief to include this same argument.

8. ¶The District Court granted the City's motions for summary judgment on September 28, 1998, holding that the City did not owe Dobrocke a duty of care and that even if the City did owe a duty of care as a matter of law, it had not breached that duty. In addition, the court determined that the City was not negligent *per se* and that the City was immune from suit under the recreational use statute.

9. ¶Dobrocke appeals the District Court's September 28, 1998 Order and Rationale.

## Standard of Review

1. ¶Our standard of review in appeals from summary judgment rulings is *de novo*. *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21 (citing *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Oliver*, ¶ 21 (citing *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903). We set forth our inquiry in *Bruner* as follows:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Oliver, ¶ 21 (quoting Bruner, 272 Mont. at 264-65, 900 P.2d at 903). In actions alleging negligence, we have stated:*

Ordinarily, negligence actions involve questions of fact and are not susceptible to summary judgment. However, when reasonable minds cannot differ, questions of fact can be determined as a matter of law. For example, if the moving party establishes that one element of a cause of action lacks any genuine issue of material fact and the non-moving party does not come forward with proof that a genuine issue does exist, summary judgment is proper.

*Richardson v. Corvallis Pub. School Dist. (1997), 286 Mont. 309, 311-12, 950 P.2d 748, 750.*

1. ¶Moreover, in a summary judgment proceeding, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences will be drawn therefrom in favor of the party opposing summary judgment. *Oliver*, ¶ 22 (citing *Joyce v. Garnaas*, 1999 MT 170, ¶ 8, 295 Mont. 198, ¶ 8, 983 P.2d 369, ¶ 8). Consequently, we will view the evidence in the light most favorable to Dobrocke and all reasonable inferences will be drawn in her favor.

## Issue 1.

1. ¶*Whether we should dismiss Dobrocke's appeal for failure to comply with Rule 4(c) and Rule 54, M.R.App.P.*

2. ¶The City argues that Dobrocke's appeal should be dismissed because Dobrocke did not address the applicability of Rule 54, M.R.App.P., regarding the use of alternative dispute resolution procedures, in her Notice of Appeal as required by

Rule 4(c), M.R.App.P. Rule

4(c), M.R.App.P., provides, in pertinent part:

Content of the notice of appeal. The notice of appeal shall specify the party or parties taking the appeal; and shall designate the judgment, order or part thereof appealed from. *The notice of appeal shall substantially comply with Form 1 in the Appendix of Forms to Rule 54.* An appeal shall not be dismissed for informality of form or title of the notice of appeal, so long as the information required in Form 1 in the Appendix of Forms to Rule 54 is contained in the notice of appeal. [Emphasis added.]

Rule 4(c), M.R.App.P., also requires:

(1) In the event the appellant fails to certify in the notice of appeal that the appeal is or is not subject to the mediation process required by Rule 54, *the clerk of the district court shall issue a written notice,* substantially complying with Form 6 in the Appendix of Forms to Rule 54, *directing the appellant to file an amended notice of appeal containing the required certification within 7 days.* [Emphasis added.]

This apparently was not done in this case.

1. ¶Rule 54, M.R.App.P., is applicable to all appeals from the Worker's Compensation Court, to appeals in various aspects of domestic relations cases, and to appeals in actions seeking monetary damages. Rule 54(a), M.R.App.P. The City argues that since Dobrocke's action sought monetary damages, the appeal is subject to Rule 4(c) and Rule 54, and that to ignore completely the requirements of these rules in this case would be indefensible. Dobrocke argues, on the other hand, that rather than being an appeal from a monetary judgment, this is an appeal from a summary judgment where a district court has found as a matter of law that there is no cause of

action.

2. ¶Rule 54(a)(3), M.R.App.P., expressly states that the rule applies to "[a]ppeals in actions seeking monetary damages/recovery." In addition, the Committee Comments to Rule 54(a) specify that "[t]he Money Judgments category includes appeals in all civil cases in which money damages or monetary recovery are sought." Thus, we conclude that the determining factor is the relief sought and not the type of order or judgment being appealed. Consequently, since Dobrocke's District Court action against the City is an action "seeking monetary damages/ recovery," Dobrocke's appeal is subject to Rule 4(c) and Rule 54.

3. ¶ Even so, this Court has not yet addressed whether the total failure to comply with the requirements of Rule 4(c) and Rule 54 can subject an appellant to dismissal. We now conclude that it can, for if there are no consequences for failure to meet the requirements imposed by this Court, litigants and their attorneys will continually fail to meet such requirements. In this case, however, we conclude that dismissal of the appeal would be too harsh a remedy since we have not heretofore addressed this issue and since part of the blame for not addressing the applicability of Rule 54 in the notice of appeal must fall on the clerk of the District Court for failing to direct Dobrocke to file an amended notice of appeal containing the required certification. *See* Rule 4(c)(1), M.R.App.P.

4. ¶Accordingly, we will not dismiss Dobrocke's appeal for failure to comply with Rule 4(c) and Rule 54. However, in the future, an appellant's failure to comply with these rules will subject the appeal to dismissal.

## Issue 2.

1. ¶*Whether the City owed a duty to Dobrocke.*

2. ¶A cause of action in negligence consists of four elements: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Brown v. Demaree* (1995), 272 Mont. 479, 482, 901 P.2d 567, 569 (citing *Hatch v. State Dept. of Highways* (1994), 269 Mont. 188, 192, 887 P.2d 729, 732). The first element of a negligence claim, duty, is a question of law. *Brown*, 272 Mont. at 482, 901 P.2d at 569 (citing *Hatch*, 269 Mont. at 195, 887 P.2d at 733; *Geiger v. Dept. of Revenue* (1993), 260 Mont. 294, 298, 858 P.2d 1250, 1252).

3. ¶In the case *sub judice*, the District Court determined, as a matter of law, that the City did not owe Dobrocke a duty of care while she was walking in the area in question because Dobrocke was not walking along a sidewalk, street or path of any kind; the City did nothing to invite her to travel in that area; and there were no city

lights or signs in the vicinity. The court analogized this situation to a city's duty with regard to public parks as stated in 18A Eugene McQuillin, *McQuillin Municipal Corp.* § 53.112 (1993 3rd ed.). *McQuillin* states that liability for injuries on park roads and ways

may sometimes rest on the same ground as the liability for defective streets or sidewalks, but, a city is not required to keep every part of a public park safe for public travel, and is not liable for an injury sustained on a defective pathway not constructed for the use of the public.

*McQuillin, § 53.112.*

1. ¶Dobrocke argues that the District Court erred in failing to conclude that the City has a duty to maintain the public streets, sidewalks and rights of way within its corporate limits in a reasonably safe condition for public travel. In support of her position, Dobrocke cites *Richardson v. Corvallis Pub. School Dist.* (1997), 286 Mont. 309, 950 P.2d 748. We stated in *Richardson*:

We have consistently held as a matter of law that "the owner of a premises has a duty to use ordinary care in maintaining his premises in a reasonably safe condition and to warn of any hidden or lurking dangers."

*Richardson, 286 Mont. at 313, 950 P.2d at 751 (quoting Brown, 272 Mont. at 482, 901 P.2d at 569.) See also Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 144, 706 P.2d 491, 498.*

1. ¶However, we further stated in *Richardson* that while we have consistently held that a property owner owes this general duty of care, we have not consistently articulated a standard to determine what constitutes a "reasonably safe condition." *Richardson*, 286 Mont. at 313, 950 P.2d at 751. Consequently, we adopted the following standard of care in *Richardson*:

The possessor of the premises has a duty to use ordinary care in maintaining the premises in a reasonably safe condition and to warn of any hidden or lurking dangers. What constitutes a reasonably safe premises is generally considered to be a question of fact.

Whether a premises is reasonably safe depends to a large extent on what use the property is put to, its setting, location and other physical characteristics; the type of person who would foreseeably visit, use or occupy the premises; and the specific type of hazard or unsafe condition alleged. The possessor of the premises is not liable to persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

In other words, the possessor of the premises may no longer avoid liability simply because a dangerous activity or condition on the land is open and obvious; this includes avoiding liability for open and obvious natural accumulations of ice and snow. Rather, the possessor of the premises may only be absolved from liability for injuries resulting from open and obvious dangers if he should *not* have anticipated harm to occur. This does not mean that the possessor of the premises is an absolute insurer of the safety of the premises. Instead, whether the possessor of the premises should have anticipated harm depends on "the degree of ordinary care which reasonable persons would use under the same or similar circumstances."

*Richardson, 286 Mont. at 321, 950 P.2d at 755-56 (citations omitted).*

1. ¶Dobrocke maintains that the City ignored its duty and never went on the premises so it never inspected the land for hazards, it never mowed, it never raked, and it never cleaned debris. Dobrocke contends that had this routine maintenance been done, the mower or rake would have caught the barbed wire.

2. ¶The City, on the other hand, concedes that it has a duty to keep its sidewalks and highways in a reasonably safe condition for ordinary use and public travel. But, the City argues that when Dobrocke had her accident, she was not walking along a sidewalk or highway. Instead, she was walking in a grassy area three or four feet from the side of the street that is not maintained by the City. The City argues that it does not, therefore, owe Dobrocke a duty because there is nothing in the area suggesting it is a walkway or inviting the public to use it as such.

3. ¶In *Limberhand v. Big Ditch Co.* (1985), 218 Mont. 132, 706 P.2d 491, we did away with the designation of invitee, licensee or trespasser and held that the status of an injured party does not affect a property owner's general duty of care because "[t]he test is always not the status of the injured party but the exercise of ordinary care in the circumstances by the landlord." *Limberhand*, 218 Mont. at 140, 706 P.2d at 496 (cited with approval in *Richardson*, 286 Mont. at 317, 950 P.2d at 753)

4. ¶Moreover, we stated in *Richardson* that

[e]xcept as otherwise provided by law, *everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property* or person except so far as the latter has willfully or by want of ordinary care brought the injury upon himself. [Emphasis added.]

*Richardson*, 286 Mont. at 321, 950 P.2d at 756 (quoting § 27-1-701, MCA).

1. ¶Accordingly, we hold that the City did owe a duty to Dobrocke and we reverse the District Court's order granting summary judgment to the City on this issue.

## Issue 3.

1. ¶*Whether the District Court correctly held that the City's failure to have notice of the existence of the wire precluded relief against it as a matter of law.*
2. ¶Citing *Wiley v. City of Glendive* (1995), 272 Mont. 213, 900 P.2d 310, the District Court determined that Montana law requires that a City must have notice of a defect in its streets or sidewalks before it can be held liable for an accident occurring as a result of that defect. The District Court determined that, in this case, there is unrebutted evidence in the record that the City did not have notice of the wire, therefore, the City cannot be held liable.
3. ¶Dobrocke argues that the District Court erred because notice of a defect is not required under Montana law, rather, the standard for premises liability is as stated in *Richardson*. We agree with Dobrocke that the District Court's reliance on *Wiley* is not well taken in light of our later holding in *Richardson*. Hence, a closer look at *Wiley* and the cases upon which it relies is appropriate.
4. ¶In *Wiley*, plaintiff filed a negligence action against the Montana Department of Transportation (the State) and the City of Glendive (the City) to recover for injuries sustained when she slipped on a metal pullbox cover on a sidewalk in Glendive and fractured her ankle. Plaintiff asserted that the State and the City "installed, constructed, maintained, and/or operated the metal plate in a dangerous, defective, and unsafe condition." *Wiley*, 272 Mont. at 216, 900 P.2d at 312. The District Court

granted the State's and the City's motions for summary judgment and plaintiff appealed. On appeal, this Court stated that "when the State has notice of a defect and opportunity to act, it has the duty to cure, remove, or warn of that defect." *Wiley*, 272 Mont. at 217, 900 P.2d at 312-13. It is this pronouncement from *Wiley* on which the District Court relied in the case *sub judice* to deny recovery to Dobrocke.

5. ¶However, contrary to the District Court's view in the present case, *Wiley* did not affirmatively provide the governmental entity a safe haven from liability where it did not have notice of a defect. Rather, the issue addressed by this Court in *Wiley* was whether the plaintiff had established that a defect or dangerous condition existed in the sidewalk of sufficient magnitude to cause a reasonable person to conclude that an accident was likely to occur as a result of that condition. *Wiley*, 272 Mont. at 218, 900 P.2d at 313. Thus, the pronouncement in *Wiley* regarding notice was largely dicta. Furthermore, the cases we cited in *Wiley* that appeared to support the idea that notice was required, *Sullivan v. City of Butte* (1937), 104 Mont. 225, 65 P.2d 1175, and *Buck v. State* (1986), 222 Mont. 423, 723 P.2d 210, do not, in fact, stand for that proposition.

6. ¶The plaintiff in *Sullivan* was injured when she slipped on a coalhole cover in the sidewalk. The primary question in that case was not whether the city had notice of the alleged defect, but whether a defect existed in the sidewalk of sufficient magnitude to cause reasonable men to conclude that an accident was likely to occur as a result of that defect. *Sullivan*, 104 Mont. at 230, 65 P.2d at 1177.

7. ¶Moreover, while we stated in *Buck* that "[w]hen defects are present the State's duty to cure or remove the same, or give warning thereof begins when it has notice of the same and opportunity to act," *Buck*, 222 Mont. at 430, 723 P.2d at 214, the cases cited, *Cameron v. State of California* (Cal. 1972), 497 P.2d 777, and *Parfait v. State Dept. of Highways* (La.1976), 334 So.2d 549, do not support that proposition. In a footnote to the opinion in *Cameron*, the California Supreme Court quoted a California statute that set forth the requirements for finding a public entity liable for injury caused by a dangerous condition of its property. This statute predicates liability on whether an employee of the public entity commits a negligent or wrongful act or omission within the scope of his employment, or whether the public entity has actual or constructive notice of the dangerous condition for a sufficient time prior to the injury to have taken measures to protect against the dangerous condition. *Cameron*, 497 P.2d at 780 n.4. While the court in *Cameron* did quote that portion of the statute that refers to notice, notice is not part of the discussion in that case and no further mention of notice is made in the opinion.

8. ¶Similarly, in *Parfait*, the Louisiana Court of Appeals did not hold that notice was required prior to finding the Louisiana Department of Highways liable for injuries suffered by a motorist in an accident involving a defect in the shoulder of the road. Instead, the court merely pointed out that Highway Department employees stated that the shoulder of the road was inspected once or twice a week for defective conditions, thus the Highway Department was aware of the condition of the road. *Parfait*, 334 S.2d at 550.

9. ¶Because neither *Cameron* nor *Parfait* stand for the proposition that a government entity must have notice of a defect before it can be held liable for an accident occurring as a result of that defect, the statement in *Buck* to that effect is in error. As previously noted, the correct pronouncement of premises liability is as stated in *Richardson*, "the owner of a premises has a duty to use ordinary care in maintaining his premises in a reasonably safe condition and to warn of any hidden or lurking dangers." *Richardson*, 286 Mont. at 313, 950 P.2d at 751.

10. ¶In the case before us on appeal, the barbed wire was a hidden or lurking danger that would have been discovered by a city worker mowing the grass or raking the leaves. A property owner who never maintains the land, as in this case, will never have notice of defects until someone is injured. As this Court stated in *Richardson,* it does not make sense that "[t]hose who do nothing incur no liability [and] [t]hose who plow . . . are exposed." *Richardson*, 286 Mont. at 319, 950 P.2d at 754 (citing *Cereck v. Albertson's Inc.* (1981), 195 Mont. 409, 637 P.2d 509). Thus, it would not make sense to hold that landowners who never inspect or maintain their property are never exposed to liability since they could not discover a defect, while landowners who do inspect and maintain their property are exposed to liability. A jury must be permitted to determine whether it was reasonable for the City to never inspect or mow or rake when such a routine inspection or maintenance would have lifted the barbed wire from its resting place.

11. ¶Consequently, we overrule *Buck* and any other cases that hold that notice of a defect is required before a landowner, whether it be the State, a City, a corporation or a private individual, has a duty of care to persons injured on landowner's property.

12. ¶Accordingly, we hold that the District Court erred in concluding that the City's failure to have notice of the existence of the wire precluded relief against it as a matter of law.

**Issue 4.**

1. ¶*If the City did owe a duty to Dobrocke, whether the City breached that duty.*

2. ¶The District Court determined that even if the City did owe Dobrocke a duty, the City did not breach that duty as Montana law is clear that not all defects or dangerous conditions existing in city rights-of-way indicate a city has breached a duty. The court also determined that the City could not reasonably have been expected to discover a wire that Dobrocke herself had failed to see in traveling numerous times over the same area. The court concluded that it would not be reasonable or economically feasible for the City to inspect every inch of City property and right-of-way to make certain there is absolutely no debris or other items upon which an individual might trip.

3. ¶Dobrocke argues that whether the City breached its duty of ordinary care is a question of fact for the jury, therefore, the District Court was precluded from granting the City's motion for summary judgment. In *Limberhand*, we stated that while the existence of a duty is a question of law for determination by the court, whether that duty has been breached, is a question of fact to be decided by the finder of fact. *Limberhand*, 218 Mont. at 144, 706 P.2d at 498-99. *See also Brown*, 272 Mont. at 482, 901 P.2d at 569 (whether defendant breached his duty by failing to illuminate his sidewalk was a question of fact which should have been determined by the jury); *Simmons v. Jenkins* (1988), 230 Mont. 429, 435, 750 P.2d 1067, 1071 ("the *breach* of a duty of good faith is a question of fact not susceptible to summary judgment").

4. ¶As we stated earlier in this opinion:

*Ordinarily, negligence actions involve questions of fact and are not susceptible to summary judgment.* However, when reasonable minds cannot differ, questions of fact can be determined as a matter of law. For example, if the moving party establishes that one element of a cause of action lacks any genuine issue of material fact and the non-moving party does not come forward with proof that a genuine issue does exist, summary judgment is proper.

*Richardson, 286 Mont. at 311-12, 950 P.2d at 750 (emphasis added). We conclude on the record here, that reasonable minds could differ on whether the City should have taken some action to inspect, mow or rake and otherwise maintain the property where the accident occurred.*

1. ¶Accordingly, we hold that the District Court should have left the resolution of this

question to the jury and that summary judgment in this case was improperly granted.

## Issue 5.

1. ¶*Whether the City's conduct was the cause of Dobrocke's injuries.*
2. ¶The District Court determined that even assuming negligence on the part of the City, Dobrocke's act of walking in an unimproved grassy area on a very dark night, while it was raining, without a flashlight or any other lights in the area, on ground that was wet and intermittently snow packed, exceeded any negligence on the part of the City, particularly since Dobrocke testified that she was not looking down at the ground as she walked.
3. ¶The District Court and the City correctly point out that Dobrocke did not have a flashlight and that she was not looking down at the ground as she walked. They conclude from these facts that Dobrocke herself brought about the accident. Dobrocke, on the other hand, argues that contributory negligence is a question of fact to be decided by a jury. We agree.
4. ¶Section 27-1-701, MCA, provides:

**Liability for negligence as well as willful acts.** Except as otherwise provided by law, everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person *except so far as the latter has willfully or by want of ordinary care brought the injury upon himself.* [Emphasis added.]

Whether, under this statute, the City breached its statutory duty to use "ordinary care or skill in the management of [its] property" and whether Dobrocke, in failing to use a flashlight and failing to look down at the ground as she walked, by "want of ordinary care brought the injury upon [herself]," are factual questions that are appropriately resolved by the finder of fact. It is up to a jury to determine whether and, if so, to what extent, either the City or Dobrocke or both were negligent in this case. *See Brown*, 272 Mont. at 485, 901 P.2d at 571.

1. ¶Accordingly, we hold that the District Court erred in granting the City's motion for summary judgment on this issue.

## Issue 6.

1. ¶*Whether the District Court correctly held that the City was not guilty of negligence per se.*

1. ¶The District Court determined that Dobrocke's negligence *per se* claim fails as a matter of law because in order to establish negligence *per se*, it must be proven that a defendant violated a particular statute. The court concluded that Dobrocke's allegation that the City violated § 81-4-105, MCA, fails because that statute deals with sagged or fallen fences which have become ineffectual for containing livestock and it applies to the *owners* of those fences. The court determined that there is nothing here to suggest that the City owned a barbed wire fence in that area. In addition, the District Court determined that Dobrocke did not present any evidence to establish or allow a jury to conclude that the City created or maintained a public or private nuisance.

2. ¶The law in Montana is well-settled that the following elements must be proved to establish negligence *per se*: (1) the defendant violated a particular statute; (2) the statute was enacted to protect a specific class of persons; (3) the plaintiff is a member of that class; (4) the plaintiff's injury is the sort the statute was enacted to prevent; and (5) the statute was intended to regulate a member of defendant's class. *Patten v. Raddatz* (1995), 271 Mont. 276, 283-84, 895 P.2d 633, 638 (citing *Hislop v. Cady* (1993), 261 Mont. 243, 247, 862 P.2d 388, 391).

3. ¶The City contends that Dobrocke cannot satisfy the first and fifth elements necessary to establish negligence *per se* because the City did not violate § 81-4-105, MCA, and § 81-4-105, MCA, was not intended to regulate individuals or entities in the City's class. Section 81-4-105, MCA, provides:

**Fallen wire fencing declared nuisance--abatement.** All barbed wire and other wire fencing which has sagged or fallen to the ground so as to be ineffectual for the purpose of turning stock and a menace to any person riding or walking over the same is declared to be a public nuisance and subject to abatement in the manner hereinafter provided.

1. ¶The phrase "abatement in the manner hereinafter provided" in this statute refers to the remaining statutes in this part of Title 81, Chapter 4 of the Montana Code Annotated which set forth the procedure to be followed in the event § 81-4-105, MCA, has been violated. Specifically, these statutes set forth procedures for

notifying the *owner* of the fence and for the sale of the wire and the disposal of the proceeds. These statutes do not set forth any obligation or duty on anyone other than the *owner* of the fence and the wire.

2. ¶For example, § 81-4-104, MCA, expressly states that "[t]he *owners* of barbed wire fences must keep the same in repair. . . ." Section 81-4-106, MCA, states that, if a nuisance of the kind described in § 81-4-105, MCA, is found, "the board of county commissioners shall notify by registered or certified mail the *owner* of such wire, . . ." Section 81-4-107, MCA, states that in the event "there is no known *owner* of such wire within the state or if such *owner* is unknown to the board of county commissioners, the board may collect and remove the wire at the expense of the county." And, § 81-4-108, MCA, states that if the wire is sold, the surplus proceeds shall be held for one year for "the lawful *owner* of said wire. . . ."

3. ¶There is nothing in the record before us to indicate that the City owned any barbed wire fence in the area. On the contrary, the evidence shows that the only barbed wire fence was the fence erected by Crawford on Peters' property when Crawford was leasing that property from Peters. The City cannot be in violation of a statute it had no duty to observe. Furthermore, § 81-4-105, MCA, was intended to regulate the *owners* of barbed wire fences. Since the City did not own the barbed wire fence, it is not a member of the class the statute was intended to regulate.

4. ¶Dobrocke has failed to establish both the first and fifth elements of negligence *per se*, thus her negligence *per se* claim fails. Accordingly, we hold that the District Court was correct in granting the City's motion for summary judgment on this issue.

5. ¶Dobrocke also contends on appeal that the City is liable for allowing a public nuisance, as defined under § 27-30-101, MCA, to be maintained on its property. However, the City contends that Dobrocke raised this theory for the first time on appeal and that we should not consider it. In response, Dobrocke asserts that she raised this theory in her complaint, wherein she alleged:

20. Defendant City was also guilty of negligence per se, contrary to the laws of the State of Montana, more specifically § 81-4-105, MCA, as there was a fallen barbed wire on City right-of-way that was a 'menace' to Dobrocke while she was walking over it. As this condition is a statutorily defined public nuisance, the City of Columbia Falls is liable per se for Dobrocke's injuries, losses and damages.

21. This accident, as well as the resulting damage, was the direct and proximate result of a statutorily defined public nuisance, which constitutes a violation of § 81-4-105, MCA.

1. ¶While Dobrocke did raise a nuisance theory under § 81-4-105, MCA, in her complaint, she did not raise such a theory under § 27-30-101, MCA. This Court has repeatedly held that "it will not consider issues or theories of the case raised for the first time on appeal." *Minervino v. University of Montana* (1993), 258 Mont. 493, 495, 853 P.2d 1242, 1244 (citation omitted).

2. ¶Accordingly, we will not consider Dobrocke's argument as to § 27-30-101, MCA.

## Issue 7.

1. ¶*Whether the District Court correctly held that Montana's recreational use statute precludes relief against the City as a matter of law.*

2. ¶On July 9, 1998, the parties agreed and the District Court ordered that the City could amend its answer to set forth an additional affirmative defense based on Montana's recreational use statute, § 70-16-302, MCA, which restricts the liability of a landowner when a person is injured while using the landowner's property for recreational purposes. Section 70-16-302, MCA, provides in pertinent part:

**Restriction on liability of landowner.** (1) A person who uses property, including property owned or leased by a public entity, for recreational purposes, with or without permission, does so without any assurance from the landowner that the property is safe for any purpose if the person does not give a valuable consideration to the landowner in exchange for the recreational use of the property. The landowner owes the person no duty of care with respect to the condition of the property, except that the landowner is liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct.

Section 70-16-301, MCA, defines "recreational purposes" as "hunting, fishing, swimming, boating, waterskiing, camping, picnicking, pleasure driving, biking, winter sports, hiking, touring or viewing cultural and historical sites and monuments, spelunking, or other pleasure expeditions."

1. ¶The parties were allowed to submit briefs and arguments in support of and in opposition to this defense. The City submitted its supplemental summary judgment

brief in support of this defense. However, Dobrocke failed to submit a brief, affidavits, or any other materials in opposition, nor did she or her counsel appear at the hearing on the City's summary judgment motions to contest this defense. Consequently, the District Court determined that because Dobrocke did not submit any facts, arguments or evidence to rebut the inference that she was on City property for recreational purposes, the City is immune from liability pursuant to Montana's recreational use statute.

2. ¶The City argues that Dobrocke is precluded from raising factual and legal arguments on appeal in opposition to the City's position because they are untimely. We agree with the City that Dobrocke's failure to argue the existence of any genuine issues of material fact in relation to the recreational use statute in the District Court precludes her from presenting any factual arguments on appeal regarding this issue. Nevertheless, that does not release this Court of its duty on *de novo* review to review the legal determinations made by the District Court as to whether the court erred. *See Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21.

3. ¶Rule 56(c), M.R.Civ.P., regarding summary judgment motions, provides, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party *is entitled* to a judgment as a matter of law. [Emphasis added.]

In addition, Rule 56(e), M.R.Civ.P., provides, in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party. [Emphasis added.]

We cannot conclude that the City "is entitled to a judgment as a matter of law" in this case based on the recreational use statute or that summary judgment based on the recreational use statute was "appropriate" in this case.

1. ¶The City argues that since Dobrocke was not walking to get to a particular destination or to perform an errand on the night of her accident, her act of walking across City property was a recreational activity, thus the recreational use statute applies. The City cites *Fisher v. United States* (D. Mont. 1982), 534 F.Supp. 514, for its proposition that the list of "recreational purposes" included in § 70-16-301, MCA, is not an exclusive list and that walking could be included as a recreational purpose. While we agree that in some circumstances walking could be considered a recreational purpose, we cannot agree that walking to and from ones home in a residential area of a city is the type of "recreational purpose" contemplated by § 70-16-302(1), MCA.

2. ¶ Dobrocke argues that the recreational use statute is limited to areas other than urban and suburban neighborhoods. She maintains that the statute is designed for true outdoors premises and activities, thus, the city streets and boulevards in a residential neighborhood are not "property" for "recreational purposes" as defined in §§ 70-16-301 and 302, MCA. We find this argument well taken.

3. ¶The court in *Fisher* stated that the only purpose of the recreational use statute "is to encourage landowners to make their lands freely available to the public by limiting the landowners' tort liability." *Fisher*, 534 F.Supp. at 515. In the case before us on appeal, the lands in question are public lands and are already freely available to the public. No encouragement to limit tort liability is or could be necessary to make land that is already freely available to the public more available.

4. ¶Moreover, the court in *Fisher* held that "the statute is applicable in any case where the entry is made for what could *reasonably be regarded by the general public* as a recreational purpose regardless of some different purpose in the mind of a particular user." *Fisher*, 534 F.Supp. at 516 (emphasis added). We cannot conclude that the general public would regard as reasonable that simply walking to and from ones home is one of the purposes contemplated by the recreational use statute. Rather than a recreational purpose, walking to and from ones home is an everyday, ordinary, and expected use of city property by one of its citizens.

5. ¶Accordingly, we hold that the District Court erred in granting the City's motion for summary judgment under the recreational use statute.

6. ¶Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER