LOVE, J.,
Concurs in Part and Dissents in Part and Assigns Reasons.
|TI respectfully dissent from the majority’s reversal of the trial court’s September *982 30, 2008 judgment insofar as it reverses the award of damages per resolution of the interrogatories presented to the jury at trial. Further, I dissent from the majority’s amendment of the trial court’s judgment in that it assesses penalties under La. R.S. 22:658 in that I would affirm the trial court’s awards under La. R.S. 22:1220.
I concur in the majority’s affirmation of the trial court’s September 30, 2008 judgment insofar as it vacates the prior judgment; finds in favor of the plaintiff; awards the plaintiff business income for losses sustained in New Orleans and Me-tairie; and assesses judicial interest. Also, I dissent from the majority’s reversal of the trial court’s award of attorney’s fees.
The majority finds that the trial court committed legal error by permitting the jury to use a verdict form that did not comply with the applicable law. Also, 12the majority finds that Audubon’s failure to object to the jury interrogatories does not prevent this court from correcting the trial court’s legal error on appeal. Under that basis, the majority reviews this issue de novo and finds that the trial court ignored the jury’s factual finding that no damages were sustained by Audubon and by awarding damages that were not in accordance with applicable law. I disagree.
The majority finds that the answers to the first jury interrogatory are inconsistent with the answers to successive interrogatories, which requires reversal of the trial court’s judgment. The majority specifically concludes that despite the jury’s entry of an amount of damages on the jury form, “[t]he jury found that Audubon did not sustain any actual damages as a result of Lafayette’s breach; then, in an attempt to follow an incorrect instruction contained in the special verdict form, listed an amount of damages sustained by Audubon Orthopedic and Sports Medicine, APMC (“Audubon”) at each location ($175,000.00 at the uptown location and $20,000 at the Metairie location).” Further, the majority opines that “it is probably that the jury believed it was compelled to place an amount on the line provided for its response.” I find no authority for this resolution of the jury interrogatory issue, as it is an implied conclusion of the fact-finder’s beliefs.
First, I do not find that the appellants are properly before this Court on the issue of jury interrogatories. La. C.C.P. art. 1812(C)(4) provides:
(C) In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
(4) The total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars, and, if appropriate, the total amount of exemplary damages to be awarded.
La. C.C.P. art. 1812(C)(4).
Further, La. C.C.P. art. 1793 provides: |aA. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the *983 grounds of his objection (Emphasis added). If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
D. The jury may take with it or have sent to it a written copy of all instructions and charges and any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
La. C.C.P. art. 1793
Thus, unless a party objects to jury instructions before the jury retires or immediately thereafter, that party may not assign as error the giving of that instruction. Further, failure to make a contemporaneous objection to either jury interrogatories or a verdict form precludes a party from raising the issue for the first time on appeal. Whited v. Home Depot U.S.A., Inc., 27,938 (La.App.2d Cir.8/3/96), 712 So.2d 97, writ denied, 96-2340 (La.11/22/96), 683 So.2d 282; Luman v. Highlands Insurance Company, 25,445 (La.App.2d Cir.2/23/94), 632 So.2d 910. The objection must be specific and allow the trial judge an opportunity to correct the error. Jordan v. Intercontinental Bulktank Corporation, 621 So.2d 1141 (La.App. 1st Cir.1993), writs denied, 623 So.2d 1335, 1336 (La.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994).
Further, I do not find that a change in caption allows the appellant to circumvent the substantive requirement that a jury instruction issue be properly preserved for appeal. The jury interrogatories required the jury to enter a damage award if the answer to “any” rather than “all” of three questions posed was “yes.” |4While the appellant states that legal error resulted from these interrogatories that related to each location, the appellant does not categorize its assignment of error as a challenge to the jury instructions given at the trial court. Rather, the appellant captions its assignment of error as a claim that the trial court committed legal error by permitting the jury to use a verdict form that did not comply with applicable law. The appellant claims that due to the trial court’s improper instruction, the jury improperly listed a damage award, and the trial court erred in subsequently entering a damage award in favor of the appellees.
Lafayette did not launch a challenge to the jury instructions as required by law. As the majority states, the record does not contain a transcript of the charge conference nor any evidence that Lafayette preserved objections to the jury interrogatories at the trial or at the charge conference. Before this Court, Lafayette now contends that the jury’s entry of an amount for penalties despite the jury’s answers to the other jury interrogatories resulted in a legal error. However, the trial court construed the jury’s entry of an amount of penalties as a finding that damages were sustained by Audubon. By failing to make an objection to the interrogatories before the interrogatories were presented to the jury, the appellants waived their right to have the issue considered on appeal. Soares v. Lewis, 566 So.2d 129 (La.App. 5th Cir.1990); Streeter v. Sears, Roebuck & Co., Inc., 533 So.2d 54 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1255 (La.1989). I therefore find that the appellant’s issue is actually a jury interrogatory issue, and is therefore not properly before this Court.
After de novo review based on the purported legal error committed by the trial court, the majority finds that the record before us does not support the amounts of damages that were listed in jury responses to Interrogatory Nos. 11 and 22 and awarded by the trial court. However, I find the manifest error standard of Lreview applicable in the matter sub judi- *984 ce and, unlike the majority, I do not find that the same conclusion is reached when using the manifest error standard.
Further, unlike the majority, I do not find the matter before us distinguishable from Vaughan Contractors, Inc. v. Cahn, 629 So.2d 1225 (La.App. 4th Cir.1993). In Vaughan, the defendants maintained that two of the jury’s responses to interrogatories were inconsistent with one another, and, as a result, in response to subsequent interrogatories, the jury found an amount of damages, which the trial court awarded to the plaintiff. Id. at 1227. This Court affirmed the trial court’s judgment. Id. at 1229.
The Louisiana Supreme Court has consistently instructed courts of appeal to give great, “even vast,” deference to findings of fact made by the trial court. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). “With each pronouncement, the Supreme Court’s language becomes stronger, consistently admonishing courts of appeal that error correction in factual disputes is virtually non-existent.” Vaughan, 629 So.2d at 1228.
In Resell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court held that when “a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.” Id. at 845. After Rosell, the only factual findings subject to reversal were those “[wjhere documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story.” Id.
In Stobart v. State, 617 So.2d 880 (La.1993), the Court emphasized the principle that a factfinder’s choice between two permissible views of the evidence “cannot be manifestly erroneous or clearly wrong.” Id. at 883. That principle was reaffirmed in Youn, 623 So.2d 1257, which discusses the “vast” discretion afforded | fia fact-finder in reference to setting damage awards, and concludes that “an appellate court should rarely disturb an award of general damages.” Id., 623 So.2d at 1261. “The Supreme Court’s indication that a trial court judgment should rarely be disturbed can only mean that reversal of a judgment is warranted only in those rare cases where the record contains little or no evidence to support the trial court’s conclusions.”
Given the jurisprudence, I find that the manifest error standard of review applicable in the review of damages in the instant matter. Thus, I would apply the manifest error standard to the trial court’s damage award entry.
As to damages and penalties, as the majority states, La. R.S. 22:1220 requires a finding that the insured sustained damages as a result of the insurer’s breach for the trial court to award those damages. Pursuant to La. R.S. 22:1220, if damages as a result of the breach have been awarded, the trial court may, in its discretion, also award a penalty of up to twice the amount (200%) of those damages.
Dr. Warren Bourgeois, the managing partner of Audubon, testified as follows:
Q. As a result of the damage that occurred to your 2 buildings did Audubon Orthopedics as a corporation have to take out any loans to finance anything, pay salaries or do anything?
A. I don’t think we took out any loans. We as physicians scaled back our pay significantly until things were back up to where we could afford to start paying ourselves again.
Q. Did you have to fire any of your contract doctors because you could not afford to pay them?
*985 A. Just didn’t get paid. Didn’t have to fire anybody.
|7In support of the reversal of the trial court’s damage award, the majority states that there was “very little evidence” that damages were sustained by Audubon “as a result of Lafayette’s failure to timely pay the amounts due under the business interruption policy.” The majority rests this conclusion on the fact that Audubon “did not take out any loans or even access its existing credit line in order to keep its business in operation during the aftermath of Hurricane Katrina” as attested to by Janene Gloebel, Audubon’s office manager.
Unlike the majority, I do not find the fact that Audubon did not take out loans or use a credit line the only indication of whether damages were sustained. Dr. Bourgeois testified that for two of the four months, Audubon was forced to operate solely from its Metairie location. He further testified that operating out of one location perhaps decreased their capacity to see patients, as patients would typically wait three to four weeks for an appointment. He also testified that physician partners were required to scale back their pay after Hurricane Katrina until they could afford to pay themselves again.
As the trial court entered a damage award based on the findings of the jury and the record, I find no basis for supplanting this Court’s own judgment as to what it is probable that the fact-finder believed based on what they may have been compelled to place on the line for damages. I further find the majority’s conclusion an implied indication that the jury did not believe that the Audubon sustained actual damages as a result of Lafayette’s action or inaction. There are various reasons as to why the jury may have provided an amount for damages, and the trial court was in the best position to assess the fact-finder’s action.
Where there is a conflict in the testimony, a trial court’s or a jury’s reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal, even though the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court or the jury. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Further, where there are two permissible views of the evidence, the trial court’s or the jury’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 844 (La.1989). See also Harvey v. Cole, 00-1849 (La.App. 4 Cir. 1/28/02), 808 So.2d 771.
I find that the record contains sufficient proof of damages sustained by Audubon as a result of Lafayette’s breach of La. R.S. 22:1220.
I therefore dissent from the majority’s reversal of the trial court’s award of damages under La. R.S. 22:1220 in the amounts of $175,000.00 for the New Orleans Location and $20,000.00 for the Me-tairie location. I would affirm the of the trial court’s damage awards under La. R.S. 22:1220 in the amounts of $175,000 and $20,000.
Further, I dissent from the majority’s amendment of the trial court’s judgment in that it assesses penalties under La. R.S. 22:658 in that I would affirm the trial court’s awards under La. R.S. 22:1220. As the majority states, a trial court may not award penalties under both La. R.S. 22:1220 and La. R.S. 22:658. Thus, Lafayette can only be liable for penalties under only one of these two bad-faith insurer statutes, whichever one provides the greater penalty. In this instance, I find that the greater penalty assessment results from the application of La. R.S. 22:1220.
I concur with the majority’s affirmation of the trial court’s September 80, 2008 judgment insofar as it vacates the prior judgment; finds in favor of the plaintiff; *986 awards the plaintiff $240,819.58 in business income for losses sustained in New Orleans and $27,071.07 for losses sustained in Metairie; and assesses judicial interest on the business income award from the date of judicial demand until paid.
| ¡finally, I dissent from the majority’s reversal of the trial court’s award of attorney’s fees. The amendment of La. R.S. 22:658 became effective on August 15, 2006. According to Sher v. Lafayette, there are two circumstances under which an insured’s claim could arise after the effective date of the amended statute. Sher v. Lafayette Ins. Co., 2007-2441 (La.2008), 988 So.2d 186, 198. First, if insured did not provide satisfactory proof of loss prior to the amendment of La. R.S. 22:658, the petition for damages can serve as satisfactory proof and trigger the 30-day period. Id. at 199. Secondly, as the duty is a continuing one, the Sher Court considers the circumstance where the insured made satisfactory proof of loss prior to the amendment and the insurer paid that claim. Under this scenario, if the insured discovered new damage and provided satisfactory proof of loss, which the insurer failed to pay within the time period contained in the statute, but after the amendment became effective, the insurer is subject to the penalties contained in the amendment because the claim would have arisen after the effective date of the amendment. Id.
The majority finds that neither exception applies under the instant facts. The majority states that “the jury obviously rejected Mr. Cremers’ assertion because it found that prior to August 15, 2006, Lafayette arbitrarily and capriciously failed to pay Audubon’s loss within thirty days of having received satisfactory proof of such loss (emphasis added).” I disagree.
The jury found in response to Interrogatory Nos. 6 and 17 that Lafayette’s failure to pay the entire amount of the loss at each location occurred “prior to August 15, 2006” (emphasis added). However, Interrogatory Nos. 7 and 18 also contain the following language about failure to pay “after” August 15, 2006, the effective date of the amendment of La. R.S. 22:658, subjecting Lafayette to payment of attorney’s fees contained in the amendment (emphasis added). Interrogatory Nos. 7 and 18 read as follows:
|in7. Did any such failure to pay loss sustained at the uptown location occur after August 15, 2006? If so, what amount should have been paid? $240,819.58
18. Did any such failure to pay loss sustained at the uptown location occur after August 15, 2006? If so, what amount should have been paid?
$ 27,071.07
(Emphasis added).
The majority relies on Chalmette Retail Center v. Lafayette Ins. Co. 09-0217, pp. 29-30 (La.App. 4 Cir. 10/16/09), 21 So.3d 485, 504-05, and states that Chalmette held that only the pre-amendment version of La. R.S. 22:658 could be applied where the jury answered “yes” to separate interrogatories. In Chalmette, one jury interrogatory asked whether Lafayette’s failure to pay occurred before August 15, 2006, and the other asked whether Lafayette’s failure to pay occurred after August 25, 2006. Id.
However, in Chalmette, “CRC [Chalmette Retail Center] notified Lafayette of its claim on September 9, 2005; submitted proof of loss as to the business income claim in January, 2006; and filed its petition seeking damages for the business income loss on August 29, 2006 (emphasis added).” Id. at p. 29, 21 So.3d at 504. As a result, this Court found that “the insurer’s breach (failure to pay the claim within thirty days after receipt of the proof of loss) occurred prior to the August 15, 2006 effective date of the amendment; however, *987 the petition was Sled after the effective date.” Id.
I find Chalmette distinguishable from the instant matter. Unlike Chalmette, the record demonstrates that Audubon did not submit satisfactory proof of loss prior to the amendment date of the statute. Lafayette’s expert, Mr. Dale Cremers, CPA, when referring to Audubon’s claim, testified that as of September 26, 2006, after the amendment date of the statute, “there was not near enough information to 1 n adequately analyze it.” Thus, Mr. Cremer’s testimony provides support for the jury’s finding that Audubon did not provide satisfactory proof of loss after the amendment of La. R.S. 22:658 as of August 15, 2006.
The jury found that Lafayette failed to pay losses sustained by Audubon both before and after August 15, 2006. As a result, the trial judge awarded attorney’s fees. Given the jury’s findings and the supporting testimony adduced at trial, I find that attorney’s fees were properly awarded in the matter sub judice. The jury’s findings and the evidence adduced at trial support the trial court’s award of attorney’s fees under La. R.S. 22:658. I would therefore affirm the trial court’s award of attorney’s fees.
In conclusion, I would affirm the trial court’s award of damages pursuant to La. R.S. 22:1220; I would affirm the trial court’s judgment insofar as it vacates the prior judgment, finds in favor of the plaintiff, awards business income for losses, and assesses judicial interest; I would not amend the trial court’s second judgment that eliminated the original judgment’s assessment of a penalty under La. R.S. 22:658; and I would affirm the trial court’s award of attorney’s fees.